OPINION OF THE COURT
Bellacosa, J.
Without a contract for a definite period of employment or some other legally recognized limitation on an employer’s unqualified right to discharge an at-will employee who also happens to be a minority shareholder in a close corporation, there is no insulation under the contractual and employment relationships alleged in this case from being fired or from having invoked a stock-repurchase option.
In 1964, plaintiff-appellant Ingle sought to purchase an equity interest in respondent Glamore Motor Sales, Inc. from its then sole shareholder, respondent James Glamore. Ingle was not sold an interest in the corporation initially, but he was hired as sales manager. There was no express agreement between the parties establishing either the duration or conditions of employment.
In 1966, Glamore and Ingle entered into a written shareholders’ agreement which provided that Ingle would purchase 22 of Glamore’s 100 shares in the corporation, that Ingle would have a five-year option to purchase an additional 18 shares, and that Glamore would nominate and vote Ingle as a director and secretary of the corporation. The agreement also gave Glamore the right to repurchase all of Ingle’s stock if "Ingle shall cease to be an employee of the Corporation for *187 any reason” (emphasis added). Ingle later purchased the 18 additional shares and the parties executed a new shareholders’ agreement, which updated some facets and eliminated outdated ones. The repurchase provision of the 1973 agreement tracked identically the 1966 version.
On January 1, 1982, the corporation issued 60 additional shares of stock. Glamore purchased 22 shares of the new issue and his two sons (respondents William and Robert Glamore) each purchased 19 shares. The three Glamores and Ingle, the only four shareholders, entered into a third agreement reflecting the corporate relationship. The repurchase provision pertinent to this litigation is: "(b) Termination of employment. In the event that any Stockholder shall cease to be an employee of the Corporation for any reason, Glamore shall have the option, for a period of 30 days after such termination of employment, to purchase all of the shares of stock then owned by such Stockholder” (emphasis supplied).
At a special meeting of the board of directors held on May 9, 1983, Ingle was voted out of his corporate posts and fired from his employment as operating manager of the business. The termination was effective May 31, 1983. On June 1, Glamore notified Ingle that he was exercising the repurchase-upon-termination-of-employment option and in due course paid Ingle $96,000 for his 40 shares in the corporation.
Plaintiff argues that as a minority shareholder of a closely held corporation, employed without the benefit of a contract containing a durational employment protection and without any limitation on the employer’s right to discharge, he is nevertheless entitled by reason of his minority shareholder status to a fiduciary-rooted protection against being fired. His theory is that his employment status should not be governed by the employment at-will doctrine but, rather, that as a minority shareholder in a close corporation he should be treated as a co-owner, equivalent to a partner, whose employment rights flow from a special duty of loyalty and good faith. He next urges that an implicit covenant of good faith and fair dealing under the shareholders’ agreement precluded his termination without cause, despite the express language and nature of the agreement in that regard. He concludes that even if he is an at-will employee, an action properly lies for the respondents’ breach of fiduciary duties and for wrongful interference with his employment. Ingle started two separate actions seeking damages via seven causes of action alleging *188 breach of fiduciary duty and of contract. Eventually all causes of action were dismissed — we believe correctly.
A minority shareholder in a close corporation, by that status alone, who contractually agrees to the repurchase of his shares upon termination of his employment for any reason, acquires no right from the corporation or majority shareholders against at-will discharge. There is nothing in law, in the agreement, or in the relationship of the parties to warrant such a contradictory and judicial alteration of the employment relationship or the express agreement. It is necessary in this case to appreciate and keep distinct the duty a corporation owes to a minority shareholder as a shareholder from any duty it might owe him as an employee.
Both lower courts agree, as do we, that Ingle did not sufficiently present facts raising a triable issue regarding the existence of either an oral or written employment contract fixing employment of a definite duration (see, Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065). Under the established common-law rule — and without any reference to the shareholders’ agreement — the corporation had the right to discharge plaintiff at will (Sabetay v Sterling Drug, 69 NY2d 329, 333; O’Connor v Eastman Kodak Co., 65 NY2d 724, 725; Murphy v American Home Prods. Corp., 58 NY2d 293, 305; Weiner v McGraw-Hill, Inc., 57 NY2d 458, 465-466; Martin v New York Life Ins. Co., 148 NY 117,121).
The twist in this fact pattern is an asserted liability based on allegations that the corporate officers breached fiduciary duties of good faith and fair dealing arising from the shareholders’ agreement and on tortious interference with Ingle’s employment. The twist does not support a deviation from the governing principle in this case.
In Murphy v American Home Prods. Corp. (58 NY2d 293, supra), we concluded that there is no implied obligation of good faith and fair dealing in an employment at will, as that would be incongruous to the legally recognized jural relationship in that kind of employment relationship (id., at 304-305; see, Sabetay v Sterling Drug, 69 NY2d 329, 335-336, supra). In holding that there is no cause of action in tort for abusive or wrongful discharge of an at-will employee, we declined to allow the use of substitute nomenclature or causes, such as a prima facie tort or intentional infliction of emotional distress, to bootstrap the threshold deficiency in a wrongful discharge claim (Murphy v American Home Prods. Corp., supra, at 303- *189 304; see, James v Board of Educ., 37 NY2d 891, 892). Similarly, the plaintiff here cannot be allowed to evade the employment at-will rule and relationship by recasting his cause of action in the garb of a tortious interference with his employment (see, Inselman & Co. v FNB Fin. Co., 41 NY2d 1078,1080).
Plaintiff confuses and tries to avoid the sequential relationship of his employment status to his shareholders’ agreement by extracting an obligation from the agreement to manufacture a legally unrecognized employment security. Divestiture of his status as a shareholder, by operation of the repurchase provision, is a contractually agreed to consequence flowing directly from the firing, not vice versa. The dissent similarly confuses and inverts the Appellate Division’s and our holding (dissenting opn, at 195).
As noted, Ingle argued that the corporation discharged him because James Glamore would then have a right to repurchase his shares under the terms of the shareholders’ agreement. Notably, however, Ingle never asserted that the $2,400 per share paid to him upon termination was not fairly representative of his equity interest in the corporation. He does not contend that the corporation undervalued his shares, and he accepted payment from Glamore without reservation. Indeed, that, too, was fixed by the parties’ buy-out agreement. We have no occasion to address issues involved in cases where the minority shareholders may be discharged solely to avoid assertion of the legal rights afforded to them under Business Corporation Law §§ 1104-a and 1118 and our decision in Matter of Pace Photographers (Rosen) (71 NY2d 737), because no such matter has been pleaded and that is not this case.
Ingle’s and the dissent’s reliance on Fender v Prescott (101 AD2d 418, 422, expressly affirmed on grounds other than the corporate relationship discussion 64 NY2d 1077, 1078-1079) for an exception based on the close corporate form in which this employer and employee find themselves is unavailing. No duty of loyalty and good faith akin to that between partners, precluding termination except for cause, arises among those operating a business in the corporate form who "have only the rights, duties and obligations of stockholders” and not those of partners (see, Weisman v Awnair Corp., 3 NY2d 444, 449-450).
Finally, the dissent essentially invokes an equity appeal. While we have no quarrel whatsoever with that magnificent juridical jewel applied in its proper setting, this lawsuit does *190 not qualify. Here, fair principles of well-settled law, affecting employment and contractual relationships between private parties, govern and are entitled to respect and efficacy from this court. We cannot merely substitute our preferred notions for those of the parties themselves in such matters.
The pleading here does not support the conclusion that respondents breached a fiduciary duty as corporate officers by dismissing an at-will employee and exercising an agreed-upon repurchase-upon-termination clause (see, Bevilacque v Ford Motor Co., 125 AD2d 516, 519-520). "[Tjhere is no reason why an appeal to general fiduciary law should be used * * * as a pretext for evading * * * contractual obligations” (see, Coleman v Taub, 638 F2d 628, 636; Jenkins v Haworth, Inc., 572 F Supp 591, 601).
If there was no protection against discharge of an at-will employee in Murphy (supra) and Sabetay (supra), where there was no contractual arrangement at all, there surely can be none here where the related contract expressly confirms the unavailability of that protection. Moreover, to hold otherwise on the facts and pleadings of this case would confuse our recent holdings in an area of the law where certainty, predictability and reliability are highly prized common-law goals.
We have carefully and thoroughly considered all of appellant’s arguments and additionally conclude that his remaining arguments are also unavailing.
Accordingly, the order of the Appellate Division should be affirmed, with costs.