ALMA LEIBOWITZ, Appellant, v BANK LEUMI TRUST COMPANY OF NEW YORK et al., Respondents.

Second Department, November 27, 1989

APPEARANCES OF COUNSEL

*Leeds & Morelli (Leonard Leeds* of counsel), for appellant.

*Parker Chapin Flattau & Klimpl (Peter M. Panken* and *John K. Diviney* of counsel), for respondents.

## OPINION OF THE COURT

BALLETTA, J.

Does a complaint state a cause of action under Labor Law § 740, the so-called "Whistleblowers' Statute", in the absence of an allegation that the reported unlawful activity represented a "substantial and specific danger to the public health or safety"? The answer must be in the negative.

When deciding a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), "the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail" *(Guggenheimer v Ginzburg,* 43 NY2d 268, 275; *see also, Foley v D'Agostino,* 21 AD2d 60). All of the factual allegations of the complaint are to be assumed to be true *(see, Tobin v Grossman,* 24 NY2d 609, 612), and the complaint is to be interpreted in a fair and reasonable manner *(see, Williams v Williams,* 23 NY2d 592).

The plaintiff alleges that she commenced her employment with the defendant Bank Leumi Trust Company of New York (hereinafter Bank Leumi) in April 1981 as a junior collector in the collections department, and that the individual defendants Hahn and Hurley were her supervisors throughout the entire period of her employment. Although the plaintiff assertedly "had an outstanding work record" and "commanded the respect of her fellow workers and peers", she alleges that she was "repeatedly denied promotions that others less qualified received", owing to the fact that she is "a Jewish female".*

Moreover, the complaint alleges, the plaintiff was the "only Jewish female in the department headed by" Hahn, and was frequently the subject of derogatory remarks, often being called a "Hebe" or a "kike". Other alleged forms of "harassment" and "intimidation", included (1) being told that "she would have to choose between her health or her job" when she could not work overtime one day due to a doctor's appointment, (2) other employees being told not to talk to her, and (3) not being allowed a "personal day to go to the funeral of her closest friend" which caused her extreme distress. Also, when she became ill in February of 1986 due to food poisoning, Hahn and Hurley allegedly attempted to get her fired.

The plaintiff further alleges that during the course of her employment, she "had come upon some possible fraudulent activities, regarding a car dealership", which she reported to her supervisors. However, Hahn allegedly told her not to report the incidents, saying that he would "look into it himself", although he never did. Of the two incidents of suspected fraud alluded to by the plaintiff, one involved an automobile loan where documents showed different signatures for the

---

* It should be noted that of the two individuals specifically named by her as receiving promotions ahead of her, one was a woman.

borrower, and the other involved a past due automobile loan where neither the vehicle nor the borrower could be traced.

In addition, the plaintiff alleges, she was asked by Hahn and Hurley not to report any repossessed vehicles on the monthly loan delinquency reports and not to debit the loan accounts since, they explained, the cars would eventually be resold anyway. This practice is purportedly illegal under New York State banking laws. The plaintiff claims that the defendants Hahn and Hurley were therefore "deriving some kind of personal benefit in their dealings with this car dealership, in detriment to the interests of BANK LEUMI". When the plaintiff refused to do as she was told, Hahn and Hurley began to harass her, and when she reported the bad loans to the auditing department and the harassment to the personnel director, nothing was done. Thus, the plaintiff alleges, she had no choice but to resign effective April 4, 1986.

The plaintiff commenced the instant action by the service of a summons and complaint some time in January 1987. The verified complaint set forth four causes of action. In her first cause of action under Labor Law § 740, the plaintiff claimed that she was forced to resign owing to the harassment of Hahn and Hurley in retaliation for her refusal to participate in the purportedly fraudulent activities. The second cause of action claimed a violation of the Human Rights Law (see, Executive Law § 296) which prohibits discrimination in employment on the basis of religion or sex in that she was denied promotions because she was Jewish and female. The third cause of action alleged that as a result of the defendants' "harassment" she had "wrongfully been deprived of her employment", and the fourth cause of action asserted "[t]hat the defendants [had] maliciously, wantonly and intentionally inflicted severe emotional harm on the plaintiff".

The defendants timely moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action. The plaintiff withdrew her second cause of action alleging sex and religious discrimination because those claims were pending before the New York State Division of Human Rights. The Supreme Court dismissed the remaining causes of action pursuant to CPLR 3211 (a) (7), finding that in their entirety those causes of action stated a claim to recover damages for wrongful discharge, which does not lie in New York for an at-will employee. The Supreme Court also found that the allegations of the complaint were insufficient to state a cause of action to recover damages for intentional infliction of emo-

tional distress. The court found that the cause of action labeled as one sounding in "harassment" was in reality a component of the wrongful discharge and intentional infliction of emotional distress causes of action. Finally, the court found that the complaint failed to state a cause of action under Labor Law § 740, the so-called "Whistleblowers' Statute".

The plaintiff contends that she has stated an adequate cause of action under Labor Law § 740 in that the complaint alleges that she was forced to resign in retaliation for refusing to participate in the activities of Hahn and Hurley in connection with two automobile dealerships. She also contends that her allegations of being called a "Hebe" and a "kike", of being told to choose between her health and her job, and of being told she could not use a paid personal day to attend the funeral of her "closest" friend, sufficiently support her causes of action to recover damages for harassment and intentional infliction of emotional distress.

■ We start our analysis with the long-standing and well-established rule in this State that if the employment is not for a definite term, and if there is no contractual or statutory restriction on the right to discharge, an employer may lawfully discharge an employee whenever and for whatever cause, without incurring liability for wrongful discharge (see, Martin v New York Life Ins. Co., 148 NY 117; see also, Sabetay v Sterling Drug, 69 NY2d 329, 333; Murphy v American Home Prods. Corp., 58 NY2d 293, 300; O'Connor v Eastman Kodak Co., 65 NY2d 724, 725). The Court of Appeals has reaffirmed this principle as recently as February of this year (see, Ingle v Glamore Motor Sales, 73 NY2d 183, 188).

In Diskin v Consolidated Edison Co. (135 AD2d 775, 777), this court summarized the applicable rules as follows: "Absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will terminable at any time by either party (Sabetay v Sterling Drug, [69 NY2d 329]; Martin v New York Life Ins. Co., 148 NY 117, 121). An action to recover damages for the breach of an employment contract may be maintained, notwithstanding the indefinite term, where the existence of a limitation by express agreement is demonstrated by such circumstances as (1) the employee was induced to leave his prior employment by the assurance that his new employer would not discharge him without cause, (2) that assurance is incorporated into the employment application, and (3) the employment is subject to the provisions of a personnel handbook or manual which

provides that dismissal will be for just and sufficient cause only *(Weiner v McGraw-Hill, Inc., supra; see also, Kotick v Desai,* 123 AD2d 744)".

The plaintiff herein has not alleged any facts to suggest "the existence of a limitation by expressed agreement"; therefore, she was an employee-at-will subject to discharge at any time.

■ The plaintiff, however, contends that she was protected by Labor Law § 740, the so-called "Whistleblowers' Statute". She argues that the reporting of any illegal activity is sufficient to fall within the ambit of Labor Law § 740. The defendants counter that the alleged illegal activity must also "present a substantial and specific danger to the public health or safety" in order for the employee to be protected by the statute. The defendants are correct.

In *Murphy v American Home Prods. Corp.* (58 NY2d 293, 301, *supra),* which was decided in 1983, the plaintiff asked the Court of Appeals to recognize an exception to the common-law rule and "to hold employers liable for dismissal of employees in retaliation for employee conduct that is protected by public policy". The court expressly declined to do so stating that "such a significant change in our law is best left to the Legislature" *(Murphy v American Home Prods. Corp., supra,* at 301). In so holding, the court noted in a footnote:

"1. Employees in New York have already been afforded express statutory protection from firing for engaging in certain protected activities (e.g., Judiciary Law, § 519 [prohibiting discharge of employee due to absence from employment for jury service]; Executive Law, § 296, subd 1, par [e] [barring discharge of employees for opposing unlawful discriminatory practices or for filing a complaint or participating in a proceeding under the Human Rights Law]; Labor Law, § 215 [proscribing discharge of employee for making a complaint about a violation of the Labor Law or for participating in a proceeding related to the Labor Law]).

"In fact, legislation has been proposed but not adopted which would protect employees who have been terminated for taking actions which benefit the general public or society in general (e.g., 1981 NY Assembly Bill A 2566), for disclosure of violations of law or regulation which pose a substantial and impending danger to public health or safety (e.g., 1982 NY Senate-Assembly Bill S 9566, A 12451), or for disclosure of certain illegal or hazardous activities of their employers (e.g.,

1983 NY Senate Bill S 1153)" *(Murphy v American Home Prods. Corp., supra,* at 302-303, n 1).

In 1984, in response to the challenge in *Murphy (supra),* the Legislature enacted Labor Law § 740, entitled "Retaliatory personnel action by employers", also commonly known as the "Whistleblowers' Statute" (L 1984, ch 660). The crux of Labor Law § 740 is found in subdivision (2), which provides:

"2. Prohibitions. An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following:

"(a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer *that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety;*

"(b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into *any such violation of a law, rule or regulation* by such employer; or

"(c) objects to, or refuses to participate in *any such activity, policy or practice* in violation of a law, rule or regulation" (emphasis added).

The legislative history of Labor Law § 740 makes it quite clear that it was meant to protect only the reporting of a specific kind of illegal activity, namely, one that "creates and presents a substantial and specific danger to the public health or safety".

Three years prior to the adoption of Labor Law § 740, during the 1981 legislative session, the Legislature had considered but failed to adopt 1981 NY Assembly Bill A 2566 which would have created a cause of action where an employee had been "discharged from employment for acting in a manner which is of benefit to the general public or society in general". In 1982, the Assembly passed, but the Senate rejected, 1982 NY Senate-Assembly Bill S 9566, A 12451 which would have prohibited retaliatory action against an employee who disclosed an employer practice "that the employee reasonably believes to be a violation of law or regulation, or that the employee reasonably believes poses a substantial and impending danger to public health or safety". Similar legislation was rejected in 1983 *(see,* 1983 NY Senate Bills 1153).

Finally, in 1984, the Legislature passed the limited protection for so-called "whistleblowers" embodied in Labor Law

§ 740. Upon signing the bill into law, Governor Cuomo wrote: "[t]he bill, which contains a concept in my 1984 Legislative Program, will protect employees from adverse or retaliatory personnel action by their employers when they have reported information concerning the employer's activities constituting a violation of law, rule or regulation which presents a specific and substantial danger to the public health and safety" (Governor's mem approving L 1984, ch 660, 1984 Legis Ann, at 228-229). The new legislation was the result of a last-minute compromise. It severely disappointed labor advocate groups since it only covered health and safety threats, and not white collar crime (see, A Bill to Protect Workers' Right Gains in Albany, New York Times, June 27, 1984, at B2, col 6).

The Practice Commentaries to Labor Law § 740 also make it clear that the statute affords protection only to employees who report on activities that present a danger to the public health and safety:

"Labor Law 740, enacted by L 1984 ch 660, creates a statutory remedy for employees fired or otherwise penalized for reporting to a public body or refusing to participate in a legal violation which 'creates and presents a substantial and specific danger to the public health or safety.' § 740 (2) (a). Its goal is to encourage those at the working level to report hazards to supervisors and then if necessary to public authorities. * * *

"Section 740 was intended to deal with a situation where, for example, an employee at a hazardous installation notices a dangerous condition, reports it, but finds that no action is taken, then reports the risk to the authorities and is fired for doing so. The hope is, of course, that the frequency of events such as those involving the pesticide plant at Bhopal, the accident at Three Mile Island, manufacture and distribution of Thalidomide, failure of the Challenger space shuttle and the like can be reduced" (Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 30, Labor Law § 740, at 546).

Since passage of the statute in 1984, the Legislature has considered but failed to pass other changes which would have extended the protection offered by the statute (see, Minda and Raab, Time for an Unjust Dismissal Statute in New York, 54 Brooklyn L Rev 1137, 1139 [1989]).

Moreover, a 1986 amendment to Civil Service Law § 75-b, the companion "whistleblower" protection for public employ-

ees, lends further support to the argument that Labor Law § 740 applies only in situations where the public health or safety is involved. Civil Service Law § 75-b was initially adopted in 1984 and contained the same language as Labor Law § 740 *(see,* L 1984, ch 660). However, in 1986, section 75-b was amended to protect public employees from retaliation when they reported conduct which they reasonably believed constituted a violation of any Federal, State or local law, rule or regulation (L 1986, ch 899). Governor Cuomo noted that: "The bill widens the protection for a public employee in two respects. First, the violation need not constitute a danger to public health or safety. Second, the employee need not be right that a violation has in fact occurred but is protected if the employee reasonably believed that a violation had occurred" (Governor's mem approving L 1986, ch 899, 1986 Legis Ann, at 365). The clear inference, therefore, is that the protection offered by the language of Labor Law § 740, which remains unchanged, is much narrower and is still limited to violations which constitute a danger to the public health or safety.

The few cases that have interpreted Labor Law § 740 have also come to the conclusion that an employee is protected only when the alleged illegal activity threatens the public health or safety.

In *Kern v DePaul Mental Health Servs.* (139 Misc 2d 970), the Supreme Court, Monroe County, granted an employer's motion for summary judgment dismissing a complaint in which the plaintiff had alleged that she had been fired from her job as an aide at a home for the handicapped after she had reported seeing two residents engaging in sexual intercourse. The court, after finding that the two had engaged in consensual activity, which was not a violation of any law, rule or regulation, stated that the mere *"belief* on the part of the employee that a violation has occurred is not sufficient to invoke the statute's protection" *(Kern v DePaul Mental Health Servs., supra,* at 973). In any event, even if the plaintiff had shown a violation, "such [a] violation, consisting of consensual sexual acts, [could not] be said to create a substantial and specific danger to the public health or safety" *(Kern v DePaul Mental Health Servs., supra,* at 974).

Later, in *Vella v United Cerebral Palsy* (141 Misc 2d 976), the Supreme Court, New York County, granted an employer's motion to dismiss a complaint for failure to state a cause of action under CPLR 3211 (a) (7) where the plaintiff had alleged

that he had been fired after reporting that the employer was being overbilled for certain supplies in violation of Federal regulations governing recipients of Federal funds. The court commented that although the plaintiff had alleged violations of specific statutes,

"The complaint does not however allege acts which create a 'substantial and specific' damage to the public health. What is alleged are wrongful payments and overpayments. Such acts themselves, even though they relate to plumbing facilities, do not in and of themselves constitute a 'substantial and specific' damage to the public health. The statute affords protection only to employees who reported violations, etc., relating to damages to the public health or safety; it did not extend such protections to all reports of misconduct.

"The complaint therefore fails to state a cause of action, and will be dismissed" *(Vella v United Cerebral Palsy, supra,* at 978).

Very recently, the Appellate Division, First Department, has also had the opportunity to consider the scope of Labor Law § 740. In *Remba v Federation Employment & Guidance Serv.* (149 AD2d 131 [Aug. 17, 1989]), the plaintiff claimed that she had been discharged because she objected to the defendant's purported fraudulent billing of New York City. The court ruled that absent an allegation that the employer's conduct also constituted a substantial and specific danger to the public health and safety, the complaint failed to state a cause of action under Labor Law § 740. Moreover, merely asserting that the conduct did present such a danger to the public, "without any supporting facts, is legally deficient and will not support a cause of action" *(Remba v Federation Employment & Guidance Serv., supra,* at 138).

The plaintiff in *Remba* also argued, as does the plaintiff in this case, that the language of Labor Law § 740 (2) (c) (prohibiting retaliation when an employee "objects to, or refuses to participate in any such activity") was not limited by the "substantial and specific danger to the public health or safety" proviso of Labor Law § 740 (2) (a). Significantly, the court rejected that argument, specifically stating: "In this case, the phrase in subdivision 2 (c)—'any such activity, policy or practice'—clearly has as its antecedent the unlawful activity, policy or practice referred to in paragraph (a), which unlawful activity is unequivocally qualified by the requirement that it create and present a substantial and specific danger to the

public health or safety. Plaintiff's limited reading of Labor Law § 740 (2) (c) so as not to require a showing that the violation of law, rule or regulation creates and presents a substantial and specific danger to the public health or safety is directly contrary to the plain language of the statute, inasmuch as it impermissibly renders the word 'such' meaningless, and materially changes the statute's import" *(Remba v Federation Employment & Guidance Serv., supra,* at 138).

One Federal court has also commented on the narrowness of the New York statute. In *Littman v Firestone Tire & Rubber Co.* (709 F Supp 461), the plaintiff alleged that he had been discharged for reporting certain fraudulent activities by Firestone employees. In discussing whether Ohio, New York or New Jersey law should be applied (the defendant was an Ohio corporation and the plaintiff was a New York resident who worked out of the defendant's New Jersey office), the court stated: "The choice of law issue is important because plaintiff would not be able to maintain his claim under either New York or Ohio law. * * * New York, by statute, affords a limited cause of action for employees who disclose or threaten to disclose an employer's activity that is in violation of a law 'which violation creates and presents a substantial and specific danger to the public health or safety.' N.Y. Lab. Law § 740 (2) (a) (McKinney 1988). Plaintiff's complaint neither alleges nor could it allege any danger to the public health or safety sufficient to make out a claim under New York law as it concerns pure fraud practiced against defendant by its employees" *(Littman v Firestone Tire & Rubber Co., supra,* at 469).

It should also be noted that the New York statute has been criticized by a number of commentators "because it provides protection only when the whistleblowing concerns the violation of a law, rule, or regulation that 'creates and presents a substantial and specific danger to the public health or safety' " (Dworkin and Near, *Whistleblowing Statutes: Are They Working?,* 25 Amer Bus LJ, 241, 253 [1987]; *see also,* Minda and Raab, *Time for an Unjust Dismissal Statute in New York,* 54 Brooklyn L Rev 1137, 1138, 1182-1187 [1989]; Minda, *The Common Law of Employment At-Will in New York: The Paralysis of Nineteenth Century Doctrine,* 36 Syracuse L Rev 939, 942 [1985]).

In any event, the Court of Appeals has impliedly indicated that Labor Law § 740 is inapplicable to a situation such as the one at hand. In *Sabetay v Sterling Drug* (69 NY2d 329, *supra),*

the plaintiff alleged that he had been discharged from his employment in July of 1984 because he refused to participate in certain illegal activities (i.e., tax avoidance schemes and maintenance of slush funds), and because he reported these activities to his supervisor. The Court of Appeals rejected the plaintiff's argument that the complaint stated a cause of action for the breach of any implied covenant of good faith arising out of the employment relationship, stating:

"We have noted that significant alteration of employment relationships, such as the plaintiff urges, is best left to the Legislature *(see, Murphy v American Home Prods. Corp.,* 58 NY2d 293, 301-302, *supra),* because stability and predictability in contractual affairs is a highly desirable jurisprudential value.

"Indeed, the Legislature has responded to this appropriate sensitivity by enacting numerous protections against abusive discharge and by prohibiting employers from discharging at-will employees for reasons contrary to public policy *(see,* Judiciary Law § 519; Executive Law § 296 [1] [e]; Labor Law §§ 215, 740; Civil Service Law § 75-b)" *(Sabetay v Sterling Drug,* 69 NY2d 329, 336-337, *supra).*

By citing Labor Law § 740 as it did, the court obviously felt that the statute did not protect the reporting of illegal activities that did not endanger the public health or safety.

In fact, the New York courts have been reluctant to sustain a cause of action to recover damages for abusive discharge based upon a violation of public policy *(see, O'Donnell v NPS Corp.,* 133 AD2d 73 [plaintiff allegedly fired when he refused to participate in a scheme to divert assets from a bankrupt company]; *Pavolini v Bard Air Corp.,* 88 AD2d 714 [plaintiff allegedly discharged because he reported safety violations to the Federal Aviation Administration]; *Edwards v Citibank,* 74 AD2d 553 [plaintiff allegedly discharged because of his disclosure of improper banking practices]). In the absence of any express statutory language evidencing a legislative intent to extend protection to "whistleblowers" under circumstances presented here, we also decline to depart from the aforementioned line of cases.

Since the plaintiff herein has failed to allege any violations of law which present "a substantial and specific danger to the public health or safety", she is not protected by Labor Law § 740, and the first cause of action must fall. Accordingly, despite the fact that the plaintiff claims she was forced to

resign for reporting allegedly illegal activity, the common-law rule of termination-at-will applies and the plaintiff has no cause of action to recover damages for wrongful discharge *(see, Sabetay v Sterling Drug, supra; O'Donnell v NPS Corp., supra)*.

With respect to the plaintiff's third cause of action, the plaintiff argues that she has adequately stated a cause of action to recover damages for "harassment". However, as the Supreme Court noted: "the claims of harassment are nothing more than component parts of the claims for wrongful discharge, intentional infliction of mental distress, and for violation of Labor Law § 740, and should be dismissed".

In the case of *Ingle v Glamore Motor Sales* (73 NY2d 183, *supra)*, the Court of Appeals reaffirmed the common-law rules' regarding the discharge of at-will employees. Significantly, Judge Bellacosa wrote in the majority opinion: "In *Murphy v American Home Prods. Corp.* (58 NY2d 293, *supra)*, we concluded that there is no implied obligation of good faith and fair dealing in an employment at will, as that would be incongruous to the legally recognized jural relationship in that kind of employment relationship *(id.,* at 304-305; *see, Sabetay v Sterling Drug,* 69 NY2d 329, 335-336, *supra). In holding that there is no cause of action in tort for abusive or wrongful discharge of an at-will employee, we declined to allow the use of substitute nomenclature or causes, such as a prima facie tort or intentional infliction of emotional distress, to bootstrap the threshold deficiency in a wrongful discharge claim (Murphy v American Home Prods. Corp., supra, at 303-304; see, James v Board of Educ.,* 37 NY2d 891, 892)" *(Ingle v Glamore Motor Sales,* 73 NY2d 183, 188-189, *supra* [emphasis added]).

■ As the defendants correctly point out, the whole thrust of the plaintiff's third cause of action is actually found in paragraph 65 of the complaint which states "That by reason of defendants wrongful actions, plaintiff has been injured in that she has wrongfully been deprived of her employment". Since the plaintiff's third cause of action, although labeled by her as one sounding in "harassment", is actually one to recover damages for wrongful discharge, it was properly dismissed *(see, Murphy v American Home Prods. Corp., supra,* at 303-304).

■ The plaintiff's fourth cause of action to recover damages for the intentional infliction of emotional distress was also properly dismissed. Specifically, with respect to the intentional

infliction of emotional distress, the conduct alleged "must consist of more than mere insults, indignities, and annoyances" *(see, Nestlerode v Federal Ins. Co.,* 66 AD2d 504, 507; *also, Belanoff v Grayson,* 98 AD2d 353, 355; *Lincoln First Bank v Barstro & Assocs. Contr.,* 49 AD2d 1025); rather, it must exceed " 'all bounds usually tolerated by decent society' " *(Fischer v Maloney,* 43 NY2d 553, 557, quoting Prosser, Torts § 12, at 56 [4th ed]). The conduct must be "extreme and outrageous" and "beyond all possible bounds of decency" and "utterly intolerable in a civilized community" *(Fischer v Maloney, supra,* at 557). "The tort of intentional infliction of emotional distress predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society" *(Freihofer v Hearst Corp.,* 65 NY2d 135, 143).

While we share in the indignation of our dissenting colleague over the use of the religious and ethnic slurs "Hebe" and "kike", the particular conduct complained of in this case did not rise to such an extreme or outrageous level as to meet the threshold requirements for the tort. Although the occasional use of such derogatory and demeaning remarks reflects a certain level of narrowmindedness and meanspiritedness, this is not a case "where severe mental pain or anguish [was] inflicted through a deliberate and malicious campaign of harassment or intimidation" *(see, Nader v General Motors Corp.,* 25 NY2d 560, 569). Certainly, the use of any religious, ethnic or racial slur must be strongly disapproved and condemned. However, the fact that we view the alleged conduct as being deplorable and reprehensible does not necessarily lead to the conclusion that it arose to such a level that the law must provide a remedy. "[I]t is manifestly neither practical nor desirable for the law to provide a remedy against any and all activity which an individual might find annoying" *(see, Nader v General Motors Corp., supra,* at 569).

Furthermore, and more importantly, the plaintiff's fourth cause of action is merely a rephrasing of her basic wrongful discharge claim. In paragraph 70 of her complaint, the plaintiff alleges that the "said wrongful action by the defendants was done with the intent of inflicting emotional distress on the plaintiff so as to cause her to leave her employment". It is already clear that New York does not recognize a cause of action to recover damages for wrongful discharge, and the plaintiff's attempt to circumvent this rule by denominating

her fourth cause of action as one to recover damages for "intentional infliction of emotional distress" must fall. As the Court of Appeals stated in *Murphy v American Home Prods. Corp. (supra,* at 303): "in light of our holding above that there is now no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress".

In conclusion, therefore, the complaint failed to set forth any recognized cause of action and the Supreme Court was correct in granting the defendants' motion to dismiss. Accordingly, the order appealed from is affirmed, with costs.

HARWOOD, J. (concurring in part and dissenting in part). While I agree with my colleagues in the majority that the first and third causes of action were properly dismissed, it is my opinion that the plaintiff has alleged sufficient facts to support her fourth cause of action.

The majority correctly notes that to sustain an action to recover damages for intentional infliction of emotional distress the conduct "must consist of more than mere insults, indignities, and annoyances" *(Nestlerode v Federal Ins. Co.,* 66 AD2d 504, 507), and that there must be "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society" *(Freihofer v Hearst Corp.,* 65 NY2d 135, 143). Since, on a motion to dismiss a complaint for failure to state a cause of action (CPLR 3211 [a] [7]), we are required to view every allegation of the complaint as true and resolve all inferences in the plaintiff's favor *(Garden Realty Co. v City of White Plains,* 125 AD2d 639), I cannot agree with the majority that the conduct complained of does not "meet the threshhold requirements for the tort". I find it inconceivable that calling a person a "Hebe" and a "kike" in her place of employment, or anywhere else for that matter, could be categorized as a mere insult, indignity or annoyance. It is, rather, "atrocious", which has been defined as "extremely brutal or cruel" and "in bad taste" (Webster's Deluxe Unabridged Dictionary 120 [2d ed]). It is conduct which, in my view, should not be tolerated in a civilized society.

Twenty-eight years ago, this court, in reversing an order dismissing a cause of action to recover damages for mental distress caused by an ethnic slur, held that "[t]he law should

never suffer an injury and damage without a remedy" and "[i]t will be for the trier of the facts to determine whether such injuries were actually suffered, and whether the conduct of the defendant was such that it may be said that it went beyond all reasonable bounds of decency" *(Halio v Lurie,* 15 AD2d 62, 67). This is still the law in this State and the plaintiff's fourth cause of action should not have been dismissed *(see, Flatley v Hartmann,* 138 AD2d 345, 346).

Accordingly, I vote to modify the order appealed from, on the law, by deleting the provision thereof which granted that branch of the defendants' motion which was to dismiss the fourth cause of action, and substituting therefor a provision denying that branch of the motion, and as so modified, to affirm the order appealed from.

BRACKEN, J. P., and LAWRENCE, J., concur with BALLETTA, J.; HARWOOD, J., concurs in part and dissents in part in a separate opinion.

Ordered that the order is affirmed, with costs.