■ DONALD Z. SCHEIBER, Appellant, v ST. JOHN'S UNIVERSITY, Respondent. [600 NYS2d 734] —In an action to recover damages, *inter alia,* for breach of contract and unlawful dismissal from employment, the plaintiff appeals from a judgment of the Supreme Court, Nassau County (Goldstein, J.), dated February 6, 1991, which, upon an order of the same court, dated January 9, 1991, granting the defendant's motion for summary judgment, is in favor of the defendant dismissing the complaint.

Ordered that the judgment is affirmed, with costs.

The plaintiff, who was employed in various administrative capacities by St. John's University commencing in 1972, was discharged from his post of "Vice President for Student Life" on March 9, 1990. Thereafter, the plaintiff commenced the instant action alleging, *inter alia,* that St. John's University (hereinafter the University) had discharged him because he was a member of the Jewish faith. The plaintiff's verified complaint contains causes of action to recover damages for breach of contract, prima facie tort, and abusive discharge.

The University subsequently moved for summary judgment

dismissing the complaint. In support of its motion, the University argued, *inter alia,* that the plaintiff was an "at will" employee who served as a Vice President at the pleasure of the President of the University and that his employment was not governed by any contract, collective bargaining agreement, or employment manual. In its answer, the University denied that its termination of the plaintiff's employment was in any sense premised upon his religion. However, relying principally on Executive Law § 296 (11), the University argued that, even assuming the truth of the plaintiff's assertions with respect to the alleged discriminatory discharge, such conduct would represent "an exercise of freedom of religion protected by the Constitution and * * * the laws of the State of New York". Specifically, the University argued that while Executive Law § 296 prohibits employment discrimination on the basis of, *inter alia,* one's religious beliefs, it provides for an exemption which states in pertinent part that "[n]othing contained in this section shall be construed to bar * * * any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization, from limiting employment * * * to or giving preference to persons of the same religion or denomination" (Executive Law § 296 [11]).

In opposition to the motion, the plaintiff filed an affidavit in which he argued, *inter alia,* that the University represented in its staff handbook and student bulletin and that it was an equal opportunity employer and did not discriminate on the basis of race, color, ethnic origin, or religion. The plaintiff further argued that as an administrator, he observed that those same personnel policies governed the President's supervision and retention of his staff. However, the plaintiff did not identify any handbook, written manual, or contract specifically pertaining to the employment of university vice presidents which would support these observations. The plaintiff also outlined the history of his employment, asserting that on more than one occasion he had decided to forego other employment opportunities in order to remain at the University.

Additionally, the plaintiff disputed the University's contention that it was entitled to an exemption under the Executive Law as a religious organization. According to the plaintiff, the statutory exemption set forth in Executive Law § 296 (11) applied only to those entities incorporated under the Religious Corporations Law and "does not apply to St John's, which is an entity incorporated under the Membership Corporations Law". In his complaint, however, the plaintiff alleged that

"[t]he defendant is a Catholic School founded and sponsored by the Congregation of the Mission (the 'Vincentians')" and further alleged that the defendant "at all times * * * is administered and operated by the Congregation of the Mission * * * under the auspices and at the invitation of the Roman Catholic Church".

In reply, counsel for the University submitted, *inter alia,* a ruling from the New York State Division of Human Rights, the agency charged by the Legislature with "effectuat[ing] the purposes" of Executive Law § 296 *(see,* Executive Law §§ 293, 294), in which it concluded that the exemption under Executive Law § 296 (11) was applicable to the University based on its status as a religious organization.

By order dated January 9, 1991, the Supreme Court, Nassau County, granted the University's motion for summary judgment. The court rejected the plaintiff's assertion that the Executive Law exemption applied only to entities organized under the Religious Corporations Law, observing that the statute contained no such requirement, but instead, broadly defined the exemption to include, *inter alia,* "any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or for in connection with a religious organization" (Executive Law § 296 [11]). The court further concluded that the plaintiff was an at-will employee, rejecting his allegations that an implied agreement not to discharge him except for cause was inferable from the circumstances of his employment. Lastly, the court dismissed the prima facie tort cause of action, ruling that no cause of action exists for abusive or wrongful discharge of an at-will employee.

We agree that the University falls within the ambit of Executive Law § 296 (11) and is therefore entitled to rely upon the exemption applicable to religious organizations. As the Supreme Court properly concluded, there is nothing in subdivision (11) which requires that an organization be incorporated pursuant to the Religious Corporations Law in order to invoke the exemption. Subdivision (11) is applicable to "any organization" which is controlled, operated or supervised by or "in connection with" a religious organization. The University is an institution operated and supervised by priests of the Order of Congregation of the Mission, a Roman Catholic order of priests *(see, Matter of Carr v St. John's Univ.,* 17 AD2d 632, *affd* 12 NY2d 802). Its written "Objectives" describe the institution as a "Catholic University committed to a Christian vision of reality", whose "fundamental purpose" is to "offer

men and women, in a Catholic atmosphere, the opportunity to achieve for themselves a higher education in liberal arts" and to instill "in its students a deep appreciation of Christian ideals". Indeed, the plaintiff's own verified complaint specifically alleges that the University is "administered and operated" by the Vincentian religious order "under the auspices and at the invitation of the Roman Catholic Church". Moreover, it is significant that the New York State Division of Human Rights, the agency charged with administering and interpreting Executive Law § 296, has also concluded that the University falls within the scope of the subdivison.

Nor, as the dissenters contend, is it inconsistent or contradictory for the University to advertise its nondiscriminatory policies with respect to staff, students, and other nonpolicy making personnel, while reserving its right to exercise a preference for Roman Catholic administrators in the selection of the President's inner circle of advisors. In suggesting that the University forfeited its status as a religious entity exempt from the provisions of Executive Law § 296, the dissenters rely on statements applicable to students and staff whose employment is governed by written contracts and collective bargaining agreements—not to the select group of administrators who assist the President in shaping the University's mission and identity as an institution guided by the tenets of the Roman Catholic faith. We note in this respect that the plaintiff was the individual to whom the University entrusted the duty of overseeing student life on campus, and to whom it had delegated authority over some 18 professional and 111 nonprofessional employees. Under these circumstances, the application of Executive Law § 296 (11) is neither inconsistent nor unseemly but rather, comports with the rationale underlying its enactment, i.e., that a qualifying organization should be afforded the right to the free exercise of religion, particularly in an area so intimately related to its ability to further its mission as a religious organization (see, Corporation of Presiding Bishops v Amos, 483 US 327).

We further conclude that the Supreme Court properly dismissed the plaintiff's cause of action sounding in breach of contract, i.e., the plaintiff's contention that he could only be discharged for cause. Absent an agreement establishing a fixed duration or a limitation by express agreement, employment by a private employer is presumed to be at-will, and terminable by either party at any time (see, Sabetay v Sterling Drug, 69 NY2d 329, 333; Murphy v American Home Prods. Corp., 58 NY2d 293, 300). Courts will not infer a contractual

limitation on the employer's right to terminate an at-will employment relationship without an express agreement to that effect, which is relied upon by the employee *(see, Weiner v McGraw-Hill, Inc.,* 57 NY2d 458; *New York Natl. Bank v Harris,* 182 AD2d 680). At bar, the plaintiff failed to show that his employment as an administrator was for a specified duration, that his hiring was governed by any written contract, manual, handbook, or collective bargaining agreement, or that he accepted employment on the condition that he could be discharged for cause only *(see, Ingle v Glamore Motor Sales,* 73 NY2d 183, 188).

Finally, since "there is no cause of action in tort for abusive or wrongful discharge of an at-will employee" the plaintiff's second cause of action, alleging prima facie tort, was properly dismissed *(see, Ingle v Glamore Motor Sales, supra,* at 188; *Sabetay v Sterling Drug, supra; Leibowitz v Bank Leumi Trust Co.,* 152 AD2d 169).

We have reviewed the plaintiff's remaining contentions and find them to be without merit *(see, Corporation of Presiding Bishops v Amos, supra).* Thompson, J. P., Eiber, and Ritter, JJ., concur.

Rosenblatt, J., concurs in part and dissents in part, and votes to modify the judgment, on the law, by reinstating the third cause of action sounding in "abuse of discharge", and to otherwise affirm the judgment, with the following memorandum, in which Miller, J., concurs: We agree with the majority that the plaintiff's first cause of action sounding in breach of contract, and second cause of action sounding in prima facie tort must be dismissed. However, we would sustain the third cause of action sounding in "abuse of discharge", finding that it is sufficient to withstand a challenge to dismiss as a matter of law.

The plaintiff had been employed by the defendant St. John's University for 20 years—from 1970 to 1990—serving from 1986 to 1990 as the University's Vice President for Student Life. From 1981 to 1990 he was also an adjunct associate professor. On March 9, 1990, the plaintiff was discharged from his employment, and thereafter commenced this action, seeking damages as a result of his discharge. In his third cause of action, the plaintiff alleges that the defendant illegally fired him because of his religious beliefs.

The University moved for summary judgment and dismissal of the complaint asserting, in part, that even if it terminated the plaintiff's employment on religious grounds, the Univer-

sity, as a religious organization, was permitted to do so pursuant to Executive Law § 296 (11). The Supreme Court agreed with the University, holding that section 296 (11) authorized the University, as a Roman Catholic organization, "to give preference to persons of the same religion or denomination, or to take such other action as is calculated by that organization 'to promote the religious principles for which it is established or maintained' ".

In determining the defendant's motion, the court must accept as true the allegations made by the plaintiff *(see, Morone v Morone,* 50 NY2d 481). Indeed, the University does not dispute this point, and argues that it had the right, as a religious organization, to discharge the plaintiff on religious grounds. Executive Law § 296 (11) provides: "11. Nothing contained in this section shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization, from limiting employment or sales or rental of housing accommodations or admission to or giving preference to persons of the same religion or denomination or from taking such action as is calculated by such organization to promote the religious principles for which it is established or maintained".

We agree with the University that, under ordinary circumstances, this provision entitles them to employ only those individuals who subscribe to its religious beliefs *(see, e.g., Faur v Jewish Theol. Seminary,* NYLJ, July 7, 1987, at 14, col 3, *affd* 146 AD2d 566), and that if the University had adopted, or were to adopt, a policy by which only Roman Catholics may be admitted or employed or promoted, it would have every right to do so. In this instance, however, we believe that the University may not properly terminate the plaintiff's employment on religious grounds.

In its "Handbook for Staff Personnel", the University proclaims:

"DISCRIMINATION

*"St. John's University* is an Equal Opportunity employer and *does not discriminate on the basis of* race, color, national or ethnic origin, *religion,* age, sex, marital status, or handicap. In addition, the University continually strives to fulfill its educational goals by maintaining a fair, humane, responsible and *non-discriminatory environment for all employees* and students" (emphasis ours).

In its University Bulletin, the University similarly declares: *"St. John's University does not discriminate on the basis of* race, color, national or ethnic origin, *religion,* age, sex, marital status, or handicap in admitting students to its programs or in administering its educational policies, admission policies, scholarship and loan programs, athletics and other institutionally administered programs or activities generally made available to students at the University. In addition, the University continually strives to fulfill its educational goals by maintaining a fair, humane, responsible *and non-discriminatory environment for all employees* and students" (emphasis ours).

In an April 1, 1990, job listing in the *New York Times,* the University, in seeking a Dean of Student Life, again asserts: "St. John's University is an equal opportunity employer".

The University has argued that even if it terminated the plaintiff's employment solely on religious grounds, it is not in violation of its own representations as to nondiscrimination, claiming that the above-quoted language applies to everyone at the University except administrators. We cannot accept this interpretation. These representations are obviously intended to convey, in the most unequivocal terms, that the University does not discriminate on any of the stated grounds. The representations, by design, admit of no exclusions, and we do not think it appropriate to write one in for one group of employees, or allow one to be written in at this point.

The University has, thus, consistently and unconditionally represented to its students, its employees, and the public in general, that it strives to maintain a nondiscriminatory atmosphere in which religion plays no role in the favor or disfavor of either students or those on its payroll. Notably, the University never told the plaintiff otherwise, and, under the circumstances, he was entitled to rely on its continual representations of nondiscrimination as a basis to remain at the University, to gain advancement there, and to forfeit employment opportunities elsewhere. Given the University's vigorous assertion of this policy, it cannot now simultaneously claim that it was permitted to terminate the plaintiff's employment solely because he was not Roman Catholic.

Accordingly, we would not dismiss on the law the cause of action to recover damages for abusive discharge, but would permit a trial on the issue of whether or not the University impermissibly fired the plaintiff because of his religion, or, on the other hand, whether it had valid grounds for terminating his employment.