OPINION OF THE COURT
Renwick, J.
In New York, pursuant to the well-established common-law doctrine of employment at will, an employee-employer relationship, in the absence of a contract and a stated duration, is presumed to be a hiring at-will. An at-will employment relationship may be freely terminated by either party for any reason or even no reason at all (Wieder v Skala, 80 NY2d 628, 633 [1992]). In the 1980s, however, New York, like the vast majority of jurisdictions, enacted public policy whistleblower exceptions for both private and public employees. At-will whistleblowing employees in the private sector are protected by section 740 of the Labor Law. Some commentators question whether the Legisla *3 ture has formulated the proper balance between the competing interests intended to be protected by the statutorily created private sector at-will whistleblower exception and the judicially created traditional employment-at-will doctrine.[1] Our task here, however, is simply to determine, within the context of a motion to dismiss (CPLR 3211 [a] [7]), whether plaintiffs allegations that the headmaster terminated her employment as the school’s nurse for reporting suspected child abuse in accordance with Social Services Law § 413, rise to the level of whistleblowing activity protected by Labor Law § 740.
In 2010, plaintiff Joyce Villarin commenced this action against defendant the Rabbi Haskel Lookstein School, also known as the Ramaz School, alleging wrongful and retaliatory termination. In the complaint, which we must accept as true on a dismissal motion pursuant to CPLR 3211 (a) (7), plaintiff alleges that, in 2006, she began her employment as a nurse in defendant school’s nursery through fourth grade division (the Lower School). On November 30, 2007, a student visited plaintiff with a prominent injury on his left cheek. The student told plaintiff that his father had intentionally struck him in the face. Plaintiff then contacted the father, who admitted that he had struck the child. Moreover, the father boasted that the mother had encouraged him to do so, and that he had no remorse. At the time, plaintiff determined that, consistent with Social Services Law § 413, she had a duty to report the suspected abuse or maltreatment to the New York State Central Register of Child Abuse and Maltreatment (Register).
Accordingly, plaintiff discussed this matter with Rabbi Alan Berkowitz, the Headmaster of the Lower School. Berkowitz allegedly questioned plaintiffs motives and discouraged her from reporting the incident, even after plaintiff explained to Berkowitz that she had a legal obligation under Social Services Law § 413 to report the incident to the Register. Nevertheless, plaintiff reported the incident to the Register on December 1, 2007. There were unexpected ramifications. At a meeting on April 15, 2008, the Headmaster allegedly informed plaintiff that she was going to be terminated because both he and the direc *4 tor of the early childhood program thought that she was not “a team player.” The termination took place on June 13, 2008.
Plaintiff then commenced this action for wrongful and retaliatory termination, alleging that defendant terminated her employment in retaliation for fulfilling her reporting obligations under Social Services Law § 413. Defendant moved to dismiss pursuant to CPLR 3211 (a) (7), arguing that the complaint failed to state a claim under Labor Law § 740 because the alleged abuse was committed by a third party (the student’s father), and the incident did not present a substantial and specific danger to public health or safety. Plaintiff replied that she had a private right of action under Labor Law § 740 because she objected to or refused to participate in defendant’s policy of declining to report abuse as required under Social Services Law § 413, and defendant retaliated by terminating her employment.
Noting that plaintiff was an at-will employee, the motion court granted defendant’s motion insofar as dismissing the cause of action for wrongful termination, but denied dismissal of the retaliatory termination claim. First, the court found that “[defendant’s apparent activity, policy, or practice of failing to comply with Social Services Law [§] 413’s mandatory requirement would clearly amount to a violation of law” (2010 NY Slip Op 33772[U], *3 [2010]). Second, the court rejected defendant’s contention that because the alleged violation of law was not ongoing, it did not substantially endanger the public health or safety. Instead, the court found that “defendant[’s] . . . alleged expressed intention not to comply with Social Services Law [§] 413 will have a widespread effect on all abused children at the school and not just [this particular case] brought to [plaintiff’s attention” (id.). This appeal ensued and we now affirm.
When a defendant has challenged the facial sufficiency of a complaint, the court’s inquiry is limited to whether the allegations state any claim cognizable at law (see Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). Viewing the complaint in the light most favorable to plaintiff, and presuming the factual allegations supporting plaintiffs claim to be true (Leon v Martinez, 84 NY2d 83, 87 [1994]; Leibowitz v Bank Leumi Trust Co. of N.Y., 152 AD2d 169, 171 [1989]), we find that plaintiffs claim falls within both the letter and the spirit of the private-employee whistleblower statute.
The applicable whistleblower statute is Labor Law § 740, which provides, in pertinent part, that “[a]n employer shall not take any retaliatory personnel action against an employee *5 because such employee . . . objects to, or refuses to participate in any . . . activity, policy or practice in violation of a law, rule or regulation” (§ 740 [2] [c]). This provision “is triggered only by a violation of a law, rule or regulation that creates and presents a substantial and specific danger to the public health and safety” (Remba v Federation Empl. & Guidance Serv., 76 NY2d 801, 802 [1990]). “Retaliatory personnel action” includes the discharge of an employee (Labor Law § 740 [1] [e]). “An employee who has been the subject of a retaliatory personnel action in violation of this section” has a private right of action (Labor Law § 740 [4] [a]).
In order to establish wrongful termination pursuant to Labor Law § 740, a plaintiff must (1) allege a law, rule or regulation violated by the employer, and (2) demonstrate that the violation presents a substantial and specific danger to the public health or safety (Remba, 76 NY2d at 802; Leibowitz, 152 AD2d at 176-179). The statutory language of “substantial and specific danger to the public health and safety” is not defined in the whistle-blower statute. Courts have consistently held that the statute addresses only traditional “public health and safety” concerns. Accordingly, illegal economic or financial activities that may be inimical to the public welfare are not within the statutory protection absent a showing that the illegal activity concomitantly creates “substantial and specific danger to the public health and safety” (see e.g. Remba, 76 NY2d at 802 [fraudulent billing does not create a substantial and specific danger to the public health or safety]; McGrane v Reader’s Digest Assn., Inc., 822 F Supp 1044, 1051 [SD NY 1993] [“Financial improprieties within a corporation do not constitute threats to public health or safety”]).
In this case, the claim of retaliatory termination is predicated upon the duty to report alleged child abuse pursuant to the Social Services Law. Specifically, Social Services Law § 413 (1) (a) requires a “school official, which includes but is not limited to . . . [a] school nurse,” “to report or cause a report to be made in accordance with this title when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child.” Social Services Law § 413 (1) (c) further provides:
“A . . . school . . . shall not take any retaliatory personnel action, as such term is defined in paragraph (e) of subdivision one of section seven hundred forty of the labor law, against an employee because *6 such employee believes that he or she has reasonable cause to suspect that a child is an abused or maltreated child and that employee therefore makes a report in accordance with this title.”[2]
It cannot be seriously disputed that this statutory scheme implicates public health and safety concerns. Indeed, a review of the relevant legislative history reveals that the New York Legislature’s overriding concern was for the protection of the abused children, with the aim of preventing further harm to children (see Bill Jacket, L 1973, ch 1039). Moreover, the statute itself explicitly acknowledges the Legislature’s heightened awareness that children are being abused and that there is a need to offer them greater protection. It provides that the aforementioned reporting scheme is intended to further the findings and purpose of the Social Services Law:
“Abused and maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this title to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment and rehabilitative services for the child or children and parents involved” (Social Services Law § 411).
In furtherance of this purpose, the Legislature enacted Social Services Law § 419, which expressly provides immunity to those people or entities who report or provide services based upon a report of child abuse or maltreatment. “Immunity attaches where there is reasonable cause to suspect that the child might have been abused, and where the reporting party has acted in good faith” (see Goldberg v Edson, 41 AD3d 428, 428 [2007]). A school official acting in the scope of his or her employment is presumptively acting in good faith so long as the person did not engage in willful misconduct or gross negligence (see Social Services Law § 419; Scholz v Wright, 57 AD3d 645, 646 [2008]).
*7 Moreover, in furtherance of the goal of encouraging such reporting, the Legislature also enacted Social Services Law § 420, which expressly allows a private cause of action for money damages upon the failure of any person, official or institution required by section 413 to report a case of suspected child abuse or maltreatment (see § 420 [2]). It is clear that Social Services Law §§ 419 and 420 are complementary. To “encourage” reporting of suspected child abuse or neglect immunity is granted by section 419 when a party, in good faith, reports suspected abuse or maltreatment, while under section 420, there are criminal and civil penalties for the failure to do so.
Despite this comprehensive statutory scheme — intended to encourage reporting of child abuse, with the aim of preventing further harm to children — defendant argues on this appeal that because the alleged violation posed a danger only to a single individual or a small group of individuals, rather than the public at large, it does not create and present a substantial and specific danger to the public health and safety. Contrary to defendant’s contention, which the dissent here adopts, “there is no requirement that there be a . . . large-scale threat, or multiple potential [or actual victims;] . . . [rather] a threat to any member of the public might well be deemed sufficient” (Bompane v Enzolabs, Inc., 160 Misc 2d 315, 318-319 [1994], quoting Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 30, Labor Law § 740, 1993 Pocket Part, at 67). Further, the statute “envisions a certain quantum of dangerous activity before its remedies are implicated” (Cotrone v Consolidated Edison Co. of N.Y., Inc., 50 AD3d 354, 355 [2008]). That is, any claim that an alleged wrongdoing would create a substantial and specific danger to the public health or safety must be based on more than “mere speculation” (id. at 354-355).
This Court’s determination in Rodgers v Lenox Hill Hosp. (211 AD2d 248 [1995]) aptly illustrates the point. In Rodgers, the plaintiff alleged that he was fired in retaliation for investigating an incident in which paramedics made a series of mistakes in treating a third party who was found unconscious in her apartment, leading to her death. The paramedics then attempted to conceal the records of this incident. This Court affirmed the denial of the defendant’s motion to dismiss, explaining that the alleged misconduct represented “a manifestation of a larger problem, which may not yet have been solved,” given that there was no indication that the defendant had disciplined *8 or retrained the paramedics (id. at 253-254). This Court emphasized that, even though the plaintiff, like plaintiff here, had alleged only one mishap, the possibility that the paramedics’ inherently dangerous practice might recur “clearly me[t] the required threat to public health and safety to satisfy” Labor Law § 740 (id. at 254).[3]
Likewise, in Finkelstein v Cornell Univ. Med. Coll. (269 AD2d 114 [2000]), this Court found that the possibility that an inherently dangerous practice might recur met the necessary quantum of dangerous activity required to implicate Labor Law § 740’s protection. In Finkelstein, the issue arose in the context of a motion for summary judgment. The plaintiff alleged that he had been terminated for complaining about a doctor who worked in the burn unit (id. at 115). This Court held that a triable issue of fact existed as to whether the defendant hospital’s failure to address the doctor’s alleged psychiatric problems presented a substantial danger to public health and safety (id. at 116-117). In doing so, this Court held that the plaintiffs affidavit contending that the doctor’s behavior pattern might cause a patient harm was sufficient to make out a prima facie case under Labor Law § 740 (2) (a) (id.).
Similarly, in this case, the nurse’s allegation that defendant actively discouraged the reporting of suspected child abuse or maltreatment was sufficient to state a claim under section 740 (2), as the school’s alleged inaction might result in further abuse or maltreatment. The dissent cannot seriously dispute that ignoring a duty to report child abuse constitutes an inherently dangerous practice. If anything, the alleged misconduct here presents a more substantial danger to public health and safety than in Finkelstein, in which the alleged misconduct was limited to erratic behavior by one doctor; here, by contrast, defendant’s alleged act of firing plaintiff could potentially discourage other nurses from reporting any suspected child abuse or maltreatment.
In short, the holdings of Rodgers and Finkelstein amply refute defendant’s position, which the dissent here inexplicably adopts, *9 that the punishment of an employee for performing her statutory duties to report child abuse or mistreatment is an insufficient predicate for whistleblower protection under Labor Law § 740, despite the school’s alleged practice of discouraging such reporting. This, of course, would be contrary to the legislative policy to encourage professionals of certain fields dealing with children to freely report suggested child mistreatment. Indeed, as noted above, in enacting Social Services Law § 413, the Legislature determined that a qualified immunity from civil and criminal liability would remove “the fear of an unjust lawsuit for attempting to help protect a child” (see Mark G. v Sabol, 93 NY2d 710, 721 [1999] [internal quotation marks omitted]; see Social Services Law § 419). The Legislature deemed qualified immunity “indispensable,” as it furthered the strong public policy of protecting children (Sabol, 93 NY2d at 721). This Court declines to dilute such critical statutory protection.
Ultimately, if we were to adopt the dissenter’s position, we would place an employee who has gained credible information about child abuse on the horns of a dilemma. If she remains silent, she would subject herself to civil liability for failing to report it under section 413. If she performs her duties under section 413, she would be subject to termination by her employer without any whistleblower protection. It is difficult to conceive that, in enacting Social Services Law § 413, the Legislature ever intended to place the aggrieved employee in such a tenuous position, and we decline to do so. In this Court’s view, the whistle-blower statute should be interpreted in a way that avoids such a manifestly unjust outcome.
Accordingly, the order of the Supreme Court, New York County (Milton A. Tingling, J.), entered July 9, 2010, which, insofar as appealed from, denied defendant’s motion to dismiss the cause of action alleging retaliatory discharge, should be affirmed, without costs.

. See e.g. Liu, When Doing the Right Thing Means Losing Your Job: Reforming the New York Whistleblower Statute, 7 NY City L Rev 61, 83 (2004); Corbo, Note, Kraus V. New Rochelle Hosp. Medical Ctr.: Are Whistleblowers Finally Getting The Protection They Need?, 12 Hofstra Labor LJ 141 (1994); Minda and Raab, Time for an Unjust Dismissal Statute in New York, 54 Brooklyn L Rev 1137, 1138, 1182-1187 (1989).

. A school official who makes a report pursuant to Social Services Law § 413 (1) (a) must “immediately notify the person in charge” of the school (§ 413 [1] [b]). The person in charge is then “responsible for all subsequent administration necessitated by the report” (id.).

. The holding in Rodgers also refutes defendant’s argument, made before the IAS court, that Labor Law § 740 does not apply because the student was harmed by his father rather than defendant. Just as the paramedics in Rodgers had a duty to follow proper procedures in treating the patient even though the defendant bore no responsibility for the patient’s unconscious state, the parties in this case had a legal duty under Social Services Law § 413 to report the suspected child abuse or maltreatment committed by a third party.