**Shirley NEUFELD, et al., Plaintiffs,**

v.

**Jacob NEUFELD, Defendant.**

No. 93 Civ. 8131 (CBM).

United States District Court,
S.D. New York.

Jan. 23, 1996.

Charles H. Knull, Law Office of Charles Knull, New York City, for Plaintiffs.

Charles H. Law, Jr., New York City, for Defendant.

## *OPINION*

MOTLEY, District Judge.

Defendant in this diversity suit for intentional infliction of emotional distress has moved, *inter alia,* for dismissal of the complaint on statute of limitations grounds. Although many of the acts at the heart of plaintiffs' case did occur prior to the time within which this action should have been commenced under the appropriate New York limiting statute, plaintiffs allege that the acts complained of are part and parcel of a single, continuing tort, thus exempting them from

the statute of limitations bar. New York law recognizes that allegations of a continuing tort may toll otherwise applicable statutes of limitation. As the following discussion shows, plaintiffs' allegations that defendant engaged in a concerted campaign over several years to damage the mental capacity of plaintiffs are sufficient to make out a timely cause of action for continuing tort based on intentional infliction of emotional distress.

Defendant contends that because an amendment to the complaint should not "relate back" to the date of the commencement of the action, such amendment should be disallowed as time-barred. Lastly, defendant argues that venue is improper in this district. For the reasons stated herein, both of these arguments also fail.

## BACKGROUND

Plaintiffs Shirley and Nettie Neufeld filed this tort action alleging intentional infliction of emotional distress arising out of the campaign of harassment and mental abuse waged by defendant Jacob Neufeld, Shirley Neufeld's half-brother and Nettie Neufeld's son.

By previous order, this court denied defendant's prior motion to dismiss for failure to state a claim upon which relief can be granted.[1] Although the facts of the instant case are set forth in this prior opinion, the following is a recitation of those matters pertinent to the instant motion.

Since this court's prior decision in the instant case, plaintiffs have twice amended their complaint. Through these amendments, Nettie Neufeld was added as a plaintiff and greater detail was provided concerning the time-frame in which certain actions occurred. (See Amended Complaint, dated July 13, 1995, at ¶ 2; Second Amended Com-

plaint, dated October 6, 1995, (hereinafter "the Complaint"), at ¶ 17(G) and (H)).

The Complaint in its current form alleges that Nettie Neufeld and her husband, Israel Neufeld, each executed wills naming Shirley Neufeld as executrix and leaving fifty percent of their estate to plaintiff, twenty-five percent to plaintiff's sister, Ann Hirsch, and twenty-five percent to defendant. Nettie and Israel Neufeld each executed codicils to their wills that provided that anyone attempting to contest the wills would be disinherited.

In 1991, prior to the death of Israel Neufeld, defendant allegedly coerced Shirley Neufeld to provide him access to the wills, which were under her control. Upon reading the wills, defendant became irate because he was not named executor and felt that these wills should have been more generous to him. Soon after defendant learned of the contents of Nettie and Israel Neufeld's wills, Israel Neufeld died. (Complaint at ¶ 11.)

It is alleged that "[b]oth prior to and subsequent to the death of Israel Neufeld" defendant "intentionally schemed and engaged in activities designed to cause emotional disturbance and physical harm" to plaintiffs in an effort to upset them emotionally, so that Shirley Neufeld would suffer a nervous breakdown and defendant would gain control of all of Nettie Neufeld's assets. (Complaint at ¶¶ 12–13.)[2]

Additionally, defendant engaged in the following acts designed to bring about the same end:

1. In July of 1991, defendant allegedly drugged Nettie Neufeld, brought her to Maryland and had her confined to a psychiatric institute there. Shirley Neufeld was forced to go to Maryland and engage local counsel to obtain the court-ordered release of her

---

1. *See Neufeld v. Neufeld,* No. 93 Civ. 8131, 1994 WL 267811 (S.D.N.Y. June 15, 1994).

2. According to the complaint, constant harassment by defendant of Shirley Neufeld "during her formative years" had caused her to suffer an emotional breakdown on April 2, 1976. (Complaint at ¶ 17(J).)
 The ridicule and abuse of Shirley Neufeld after Israel Neufeld's death allegedly consisted of the following:

Defendant stated to third parties, with plaintiff SHIRLEY NEUFELD present, that she is "crazy", a "thief", and used other words to describe plaintiff SHIRLEY NEUFELD as an emotionally unfit person. Defendant was aware of the falsity of these statements but made such statements to cause emotional damage to plaintiff. . . .
(Complaint at ¶ 17(K).)

mother in September 1991. The trauma Nettie suffered from this experience has allegedly left her confined to a wheelchair. (Complaint at ¶ 17(A)–(E).)

2. In July of 1991, defendant allegedly attempted to gain control over an account in Nettie Neufeld's name in a Brooklyn, New York branch of Chemical Bank by falsely communicating to an employee of the bank that Shirley Neufeld's power of attorney for Nettie Neufeld was being challenged. (Complaint at ¶ 17(F).)

3. Beginning in December of 1992, defendant allegedly contacted various agencies and governmental bodies, such as the New York City Police Department, the Social Services Division of the City of New York, and Protective Services of the City of New York, and made false complaints against Shirley Neufeld, claiming that she was mistreating Nettie Neufeld. Defendant, who is employed by the United States Department of the Air Force at the Pentagon, allegedly used the auspices of his position with the United States Government to influence the New York City agencies to investigate Shirley Neufeld and her alleged treatment of Nettie Neufeld. The agencies, it is alleged, have been prompted to investigate Shirley Neufeld's treatment of Nettie Neufeld based on defendant's complaints. (Complaint at ¶ 17(G) and (I).)

4. On several occasions beginning in July 1993, defendant's children, at defendant's insistence, threatened the live-in health aide hired by Shirley Neufeld to help care for her mother. (Complaint at ¶ 17(H).)

## ANALYSIS

### I. MOTION TO DISMISS ON STATUTE OF LIMITATIONS GROUNDS.

#### A. Applicable Statute of Limitations.

■ In a suit based on diversity of citizenship, a federal court applies the substantive law of the forum state: including, *inter*

alia, the same statute of limitations that a court in that state would apply. *See e.g., Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir.1989) and cases cited therein. Because plaintiffs in this action are New York residents, their claims are based on New York tort law, and their cause of action accrued within the State, New York law requires that New York's statute of limitations controls. *Hoelzer v. City of Stamford, CT.*, 933 F.2d 1131, 1135–1136 (2d Cir.1991); *Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990).

In New York, claims of intentional tort such as those alleging intentional infliction of emotional distress (IIED) are subject to a one-year limitations period. N.Y.Civ.Prac.L. & R. § 215(3). *Ornstein v. Pakistan International Airlines Corporation*, 888 F.Supp. 28, 31 n. 11 (S.D.N.Y.1995); *Janneh v. Regency Hotel, Binghamton*, 870 F.Supp. 37, 40 (N.D.N.Y.1994); *Kelber v. Forest Elec. Corp.*, 799 F.Supp. 326, 340–341 (S.D.N.Y.1992); *Jones v. City of New York*, 161 A.D.2d 518, 519, 555 N.Y.S.2d 788 (1st Dep't 1990); *Gallagher v. Directors Guild of America*, 144 A.D.2d 261, 262–263, 533 N.Y.S.2d 863 (1st Dep't 1988), *appeal denied*, 73 N.Y.2d 708, 540 N.Y.S.2d 1003, 538 N.E.2d 355 (1989).

The original complaint in this action was filed on November 24, 1993. Many of the alleged acts upon which the Complaint is based took place prior to one year before commencement of the action and relief based on these acts would normally be time-barred. Defendant also argues that those allegations that are timely should be dismissed because, standing alone, they fail to set forth a cause of action for IIED.[3]

#### B. The Statute of Limitations and Continuous Torts.

■ In order to evade these fatal results, plaintiff argues that the Complaint sets forth sufficient facts to show a continuing tort and thus plaintiff may maintain this action based

---

**3.** Support for this position appears to exist in the case law. *Koster v. Chase Manhattan Bank*, 609 F.Supp. 1191, 1197–1198 (S.D.N.Y.1985) (dismissing untimely IIED allegations as time-barred and finding no other actionable conduct to have occurred within statute of limitations period);

*Cf., Weisman v. Weisman*, 108 A.D.2d 852, 853, 485 N.Y.S.2d 568 (2d Dep't 1985) (dismissing time-barred acts but permitting IIED claim based on actions occurring within statute of limitations where otherwise sufficient as a matter of law).

on acts that occurred prior to the statute of limitations window.[4]

Generally, under New York law, " '(d)espite the general principle that a cause of action accrues when the wrong is done, regardless of when it is discovered, certain wrongs are considered to be continuous wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act.' " *Leonhard v. United States,* 633 F.2d 599, 613 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) (citations omitted and alteration in original); *Thomas v. City of New York,* 814 F.Supp. 1139, 1153 (E.D.N.Y.1993); *Summers v. County of Monroe,* 147 A.D.2d 949, 537 N.Y.S.2d 703 (4th Dep't 1989), *appeal dismissed* 74 N.Y.2d 735, 544 N.Y.S.2d 819, 543 N.E.2d 84 (1989); *cf. Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994) (holding, in action under 42 U.S.C. §§ 1983 and 1985, that under federal law, where a specific pattern and practice of discriminatory conduct can be shown, "plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period").

Although New York law generally recognizes that the applicable statute of limitations will be tolled until a continuing harm ceases,[5]

conflict exists over the application of this doctrine where claims of intentional infliction of emotional distress are raised. *See Foley v. Mobil Chemical Co.,* 214 A.D.2d 1003, 626 N.Y.S.2d 906, 907–908 (4th Dep't 1995) (holding plaintiff in IIED action could not use non-actionable conduct occurring within the statute of limitations period to resurrect claim for actionable conduct occurring prior to the statute of limitations bar);[6] *Drury v. Tucker,* 210 A.D.2d 891, 892, 621 N.Y.S.2d 822 (4th Dep't 1994) (holding IIED action not time-barred because "plaintiff sufficiently set forth concrete factual allegations of a continuing course of conduct that terminated within one year" of commencement of the action); *Misek–Falkoff v. International Business Machines,* 162 A.D.2d 211, 556 N.Y.S.2d 331 (1st Dep't 1990), *appeal denied,* 76 N.Y.2d 708, 560 N.Y.S.2d 990, 561 N.E.2d 890 (1990) (holding that absent sufficient facts setting forth a "continuing conspiracy or concerted course of action" court would decline to rule on question whether statute of limitations in case in which IIED is alleged would be tolled under theory of continuing tort).[7]

As more fully set forth below, mindful of the conflict in the case law on this issue but given the general application of the con-

---

**4.** Plaintiffs also offer another argument concerning the application of a broader statute of limitations: i.e., that the complaint, with its allegations concerning attempted theft, drugging of Nettie Neufeld and forced confinement, makes out claims for recovery of damages for negligence, injury to property and personal injury, all of which are subject to a three-year limitations period. *See* N.Y.Civ.Prac.L. & R. §§ 214(4)–(5) (McKinney 1990). Under New York law, however, the one-year limitations period in § 215(3) governs in this situation because of the purported intentional quality of the alleged acts. *See, e.g., Gallagher v. Directors Guild of America,* 144 A.D.2d at 262, 533 N.Y.S.2d 863.

**5.** *See Leonhard v. United States,* 633 F.2d at 613; *Thomas v. City of New York,* 814 F.Supp. at 1153.

**6.** In *Foley,* the court limited claims for intentional infliction of emotional distress to conduct that occurred within the one-year statute of limitations finding:

> To hold otherwise "would subject defendants to never-ending liability for such claims which could at any time be triggered by non-extreme, non-outrageous, and non-tortious acts. Merely

alleging that such non-actionable conduct was an extension of actionable conduct would resurrect stale time-barred conduct, such a result would be fundamentally foreign to the purpose of statutes of limitation."

214 A.D.2d at 1004–1005, 626 N.Y.S.2d at 907 (quoting *Marshall v. Nelson Elec.,* 766 F.Supp. 1018, 1032 (N.D.Okl.1991), *aff'd,* 999 F.2d 547 (10th Cir.1993).)

The court in *Marshall* relied on *Koster v. Chase Manhattan Bank,* 609 F.Supp. at 1197 (S.D.N.Y. 1985), and other cases, in reaching its holding that plaintiff could not rely upon the continuing tort theory to resurrect otherwise stale claims where she had failed to set forth any acts falling within the statute of limitations period that could—standing on their own—make out a cause of action for IIED.

In *Koster,* however, the court there noted that plaintiff had alleged a pattern and practice of abuse, but did not mention the possible tolling of the statute of limitations with regard to the otherwise untimely claims under the continuing tort theory.

**7.** The New York Court of Appeals has not expressly ruled on the issue.

tinuing tort theory under New York law, the court finds that claims for IIED that allege a continuing pattern and practice of actionable behavior may invoke the continuing tort doctrine to provide an exemption from the statute of limitations where the "last actionable act" of the alleged course of conduct falls within the statute of limitations.[8]

### C. Plaintiffs' Claims.

■ Conscious of the conflict concerning the application of this tolling doctrine to cases in which IIED claims are alleged, the court first reviews the Complaint to determine whether plaintiffs have set forth a continuing course of conduct with sufficient particularity to establish the existence of a continuing tort. *Misek–Falkoff, supra.* The Complaint describes a concerted campaign against plaintiffs,[9] and the court finds that these allegations, when considered as a whole,[10] establish a continuous pattern and practice of tortious conduct. The court must now review the sufficiency of the allegations to determine if they state a cause of action for IIED.

■ In its prior ruling, the court found plaintiffs' allegations collectively set forth a *prima facie* IIED case.[11] The court must analyze these allegations, however, to insure

that through their description of the alleged course of conduct plaintiffs have not incorporated recent yet non-actionable conduct in an attempt to resurrect proper claims that would otherwise be barred by the statute of limitations. *See Foley v. Mobil, supra.* Moreover, because under the general doctrine of continuing torts a continuing harm tolls the statute of limitations only until the offending action ceases, *Leonhard v. United States, supra,* the court must review those acts falling within the statute of limitations to determine if they—independent of those acts that are a part of the offending course of conduct but fall outside the time bar—are sufficient to make out a claim for IIED; if they are not, then the offending action would have ceased prior to the statute of limitations period and the action would be barred as untimely.

■ Under New York law, in order to establish a cause of action based on intentional infliction of emotional distress, plaintiff must demonstrate the following four elements: (1) extreme and outrageous conduct on the part of defendant; (2) that defendant possesses the intent to cause, or exhibits disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between defendant's conduct and the injury suffered; and (4) that plaintiff

---

**8.** The court notes that the Hon. Denise L. Cote of this district recently reached a similar conclusion on this issue. *Bonner v. Guccione,* 94 Civ. 7735, slip. op. at 7–15, 1996 WL 22355 (S.D.N.Y. January 17, 1996) (*holding where last act of an uninterrupted course of actionable conduct falls within statute of limitations, plaintiff permitted to assert IIED claim for entire course of conduct, even those acts beyond the statute of limitations*). *Cf. Leonhard v. United States,* 633 F.2d at 613 (holding that under New York law where certain continuous wrongs are alleged, the last wrongful act triggers the statute of limitations).

**9.** Plaintiffs allege defendant carried out the following conduct:

1. That he "engag[ed] in a calculated campaign of extreme and outrageous conduct directed at plaintiffs and acted upon with disregard of the substantial risk that [severe emotional] distress and harm to plaintiffs would result from his actions." (Complaint at ¶ 1.)

2. That he "intentionally engaged in a course of conduct with the ultimate goal being that the plaintiff SHIRLEY NEUFELD would have severe emotional distress which would cause her to

experience another nervous breakdown and at the same time wear at the frail condition of the elderly plaintiff NETTIE NEUFELD, causing her either to become incompetent or to be led under the influence of defendant, thus permitting defendant to take control of plaintiff NETTIE NEUFELD's properties for his own advantage." (Complaint at ¶ 13.)

3. That he, "[w]ith the knowledge that SHIRLEY NEUFELD had previously suffered a nervous breakdown, defendant set about in [his campaign] of ridicule and emotional abuse to cause plaintiff SHIRLEY NEUFELD to suffer another emotional breakdown, all in an effort to obtain control of plaintiff NETTIE NEUFELD's property." (Complaint at ¶ 17(K).)

**10.** The court does not consider those claims concerning harm occurring prior to Shirley Neufeld's emotional breakdown in 1976 (Complaint at ¶ 17(J).); plaintiff has failed to allege a sufficient nexus to the apparent continuing tort to bring it within the scope of this course of conduct. *See Misek–Falkoff, supra.*

**11.** *See supra* n. 1.

endures severe emotional distress. *Howell v. New York Post Co.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993); *Coliniatis v. Dimas,* 848 F.Supp. 462, 470 (S.D.N.Y.1994).

Accepting all of plaintiffs' allegations as true for the purposes of this motion, the complaint certainly sets forth allegations sufficient to meet the last three prongs of this test; plaintiffs allege that defendant intended to cause, and did indeed cause, plaintiffs to suffer extreme emotional distress through defendant's campaign against them. The question stands, however, whether those events alleged to have occurred within one year of the filing of the complaint are sufficiently extreme and outrageous to set forth an IIED cause of action: a question which the court can decide as a matter of law. *Coliniatis v. Dimas,* 848 F.Supp. at 471 (citation omitted).

The court in *Martin v. Citibank, N.A.,* 762 F.2d 212 (2d Cir.1985), outlined New York's standard against which the complaint must be compared to determine if the allegations found therein allege conduct which is sufficiently egregious to allow plaintiffs to proceed with their IIED claim:

> New York, which uses the Restatement (2d) of Torts definition of intentional infliction of emotional distress, requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."

762 F.2d at 220 (citations omitted). *See also, Howell v. New York Post Company, Inc.,* 81 N.Y.2d at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699. The *Martin* court also noted: "New York courts have been very strict in applying these principles." 762 F.2d at 220.

A wide range of conduct—though offensive or even otherwise illegal—is not considered "utterly intolerable in a civilized society" to permit a party to maintain a cause of action for intentional infliction of emotional distress. *See, e.g., Martin v. Citibank, N.A., supra* (allegations that employ-

ees were chosen for polygraph test based on their race during internal investigation of theft of funds at bank); *Murphy v. American Home Products Corp'n,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (employee fired in humiliating manner); *Shea v. Cornell University,* 192 A.D.2d 857, 596 N.Y.S.2d 502 (3rd Dep't 1993) (apparent sexual harassment in workplace); *Leibowitz v. Bank Leumi Trust Company of New York,* 152 A.D.2d 169, 548 N.Y.S.2d 513 (2nd Dep't 1989) (use of religious and ethnic slurs to coerce employee to leave job).

In the instant case, many of the acts complained of allegedly occurred prior to the year before the action was commenced: namely, the mental abuse of plaintiff Shirley Neufeld that led to her nervous breakdown in 1976; the drugging of Nettie Neufeld; the attempt to obtain access to plaintiff Nettie Neufeld's bank account. Those allegations describing events that purportedly occurred within the one year statute of limitations are the following: the filing of complaints with various government agencies resulting in what is described as constant harassment of plaintiffs by such agencies (Complaint at ¶ 17(G)); the threatening of plaintiff Nettie Neufeld's live-in health aide. (Complaint at ¶ 17(H).)

Courts have held that continuous and coercive harassment *can* establish an IIED cause of action. *Alexander v. Unification Church of America,* 634 F.2d 673, 678–679 (2d Cir. 1980) (filing of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes); *Green v. Fischbein Olivieri Rozenholc & Badillo,* 119 A.D.2d 345, 507 N.Y.S.2d 148 (1st Dep't 1986) (baseless eviction proceedings against plaintiff-tenant by landlord, disruption in services, deterioration of living conditions, interference with mails, verbal abuse of plaintiff and his guests). *But see, Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995) (finding plaintiff had not established an IIED claim where "[a]ll that plaintiff alleges that any of the defendants has done is lodge official complaints about plaintiff's conduct or discuss the basis of those complaints with others.")[12]

---

12. The facts in *Gay* are distinguishable from those in the instant case because there is no indication that plaintiff there alleged, as here, that: 1) those agencies to which defendants com-

In the instant action, assuming the facts as alleged in the Complaint as true, *Atlantic Mutual Insurance Company v. Balfour Maclaine International, Ltd.,* 968 F.2d 196, 198 (2d Cir.1992), the allegations of constant harassment that purportedly occurred within the year prior to the filing of the instant action are sufficient to make out a *prima facie* cause of action for IIED. *Alexander v. Unification Church of America, supra.* Because many of these "last actionable acts" occurred within the statute of limitations period, the action is not time-barred. *Cf. Leonhard v. United States,* 633 F.2d at 613 (holding that under general principles of New York law, the statute of limitations " 'runs from the commission of the last wrongful act.' ") (citations omitted).

In sum, plaintiffs have alleged that defendant engaged in a continuous course of harassing conduct that commenced around the time of the death of Israel Neufeld. Such conduct was geared towards defendant's ultimate economic gain. Because plaintiffs' have set forth with sufficient detail the extent to which such harassment was part of a unified campaign directed towards this end plaintiffs may proceed with their claim based on IIED arising out of this course of conduct.

## II. RELATION BACK UNDER RULE 15(c).

In an alternative attempt to attack the claims of Nettie Neufeld, who was added as a plaintiff to First Amended Complaint, defendant argues that her claims in the Amended Complaint do not relate back to the date of the original filing. Even in a diversity case, questions regarding the relation back of amendments are governed by Rule 15(c) of the Federal Rules of Civil Procedure. *See Contemporary Mission, Inc. v. New York Times Co.,* 665 F.Supp. 248, 255 (S.D.N.Y.1987), *aff'd on different grounds,* 842 F.2d 612 (2d Cir.1988), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). *See also Hanna v. Plumer,* 380 U.S. 460, 471–74, 85 S.Ct. 1136, 1143–45, 14 L.Ed.2d 8 (1965). Rule 15(c) provides as follows:

Relation Back of Amendments.

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).

Although explicitly addressing only amendments to add defendants, Rule 15(c) also allows amendments adding plaintiffs. *Employees Sav. Plan of Mobil Oil Corporation v. Vickery,* 99 F.R.D. 138, 143 (S.D.N.Y. 1983) ("[a]s long as a defendant has received notice of the action, and is prepared to defend against it, 'his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense.' ") (citation omitted); *Red Rock Commodities Ltd. v. M/V Kopalnia Szombierki,* No. 92 Civ. 6016, 1994 WL 440822, at *4 (S.D.N.Y. Aug. 15, 1994); *Andujar v. Rogowski,* 113 F.R.D. 151, 154–55 (S.D.N.Y.1986).

In the instant matter, defendant suffers no prejudice by the addition of Nettie Neufeld as a plaintiff. The substance of the allegations concerning defendant's conduct toward Nettie Neufeld are fully set forth in the original complaint as acts which were also

---

plained actually acted on such complaints; or, 2) that defendants were government employees us-

ing their positions as such to influence other government actors.

carried out against Shirley Neufeld. The only result of the amendment is that Nettie Neufeld is added as a party. Thus, Nettie Neufeld's claims in the Amended Complaint relate back to the date of the original filing.

## III. VENUE.

 Defendant also challenges the propriety of venue in this district. Although plaintiffs have inadvertently cited the wrong venue provisions in their complaint,[13] their choice of forum "is a factor to be accorded substantial weight." *Golconda Mining Corporation v. Herlands*, 365 F.2d 856, 857 (2d Cir.1966). While plaintiffs have the burden of showing that venue *is* proper (which, as is shown below, they have), defendant actually waived this objection by not raising it in his answer to the original complaint. Fed.R.Civ. Proc. 12(h); Answer at ¶ 7. Although amending the complaint may preserve certain defenses, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994), defenses otherwise waived for defendant's failure to raise them against the first complaint are not resurrected by subsequent amendment of the complaint. *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112 (2d Cir. 1987). Accordingly, because defendant failed to challenge the venue allegations in the original complaint by his answer, filed in January 1994, defendant has waived this objection.

 Even assuming that defendant has not waived his objection to venue in this district, venue is nevertheless proper here under the venue provision plaintiffs overlooked in the Complaint. Specifically, 28 U.S.C. § 1391(a)(2) states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." This provision does not require that plaintiffs establish that the Southern District has "the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Leucadia National Corp. v. FPL Group Capital Inc.*, 93 Civ. 2908, 1993 WL 464691, at *6 (S.D.N.Y. Nov. 9, 1993) (citations omitted).

Most of the events in question in this case did take place in, or at least had their impact in, New York: i.e., almost all of the harm alleged to have been suffered by plaintiffs occurred within New York. Accordingly, venue is proper under § 1391(b). *Shube's Manufacturing Corp. v. Blake Brothers Int'l, Inc.*, 89 Civ. 2721, 1990 WL 17645, at *3 (S.D.N.Y. Feb. 21, 1990).

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss must be denied.

---

**13.** Plaintiffs rely only upon 28 U.S.C. §§ 1391(a)(1), (a)(3), & (c) (1994). (*See* Complaint at ¶ 7.) The first of these provisions states that if all defendants reside in one state, then venue is proper in any judicial district in which any defendant resides. Because defendant herein resides in Maryland, then venue is not proper in New York under § 1391(a)(1). The second of the cited provisions states that venue is proper in a judicial district in which any defendant is subject to personal jurisdiction when the action is commenced. This provision applies, however, only "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). Defendant argues that since plaintiffs have not shown that this limitation is satisfied they cannot invoke this provision. Finally, § 1391(c) applies only to corporate defendants, so it is of no avail to plaintiffs.