OPINION
 

 MOTLEY, District Judge.
 

 Plaintiff John Wolff, an observant Jew, charges the City of New York Financial Services Agency (“FISA”) and its three board members and executive director, respectively, Mark Page, Joseph Trapani, William Mullen and Joseph A. Messina (collectively, the “City defendants”) with violating section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e-5 (“Title VII”). Plaintiff also charges defendant Marilyn Blaufarb (“Blaufarb”), formerly employed by FISA, with intentional infliction of emotional distress under New York law.
 

 Plaintiff alleges that while he was employed as FISA’s general counsel, Blaufarb had wrongfully charged him with sexual harassment in retaliation for plaintiff’s unfavorable reviews of her job performance and opposition to her requested job transfer. Plaintiff further alleges that City defendants, in their investigation of these charges, had subjected him to discriminatory treatment, unfair punishment, and eventually terminated his employment, because he is an observant Jewish male. Plaintiff claims that City defendants and their female investigators had concluded that the harassment charges were meritorious due to their bias against him.
 

 Plaintiff seeks $10,000,000 in damages for intentional infliction of emotional distress from Blaufarb. He also seeks $10,000,000, reinstatement, back-pay and lost benefits from FISA and a judgment declaring that FISA engaged in discriminatory treatment. Finally, plaintiff seeks $10,000,000 in punitive damages from each individual City defendant.
 

 Blaufarb moves to dismiss plaintiffs claim for intentional infliction of emotional distress, arguing that this claim is barred by the statute of limitations in New York. She also counterclaims against plaintiff, incorporating the allegations contained in her verified complaint currently pending before the Commission of Human Rights of the City of New
 
 *261
 
 York and cross-claims against City defendants for their “tortious” conduct. City defendants, who are separately represented, move to dismiss plaintiffs complaint on the ground that plaintiff is collaterally estopped by his prior litigation against them in state court. City defendants also request costs and attorneys’ fees.
 

 I.
 
 Background
 

 FISA is a New York City agency that runs the data processing operations for the City’s personnel and units coordinating and reporting on New York City’s financial information. It is headed by an executive director and a three member board, all of whom are appointed by the Mayor and Comptroller of the City of New York.
 

 Marilyn Blaufarb began working for FISA in June of 1984 and eventually became a principal administrative associate in its technical applications unit. In November of 1987, plaintiff became FISA’s General Counsel, primarily serving as a legal advisor to the executive director. At first, Blaufarb and plaintiff did not work together.
 

 Around June of 1991, plaintiff had Blaufarb temporarily assigned to work for him. It was her understanding that this assignment, which she neither requested nor wanted, would end when certain temporary projects had been completed. However, plaintiff used his authority as Blaufarb’s supervisor to have her continue to work for him following the termination of these projects. Blaufarb grew increasingly dissatisfied with this situation and made efforts to return to the technical applications unit. Plaintiff, on the other hand, was intent that Blaufarb remain in his department and even intervened to prevent her from leaving. Plaintiff also claimed to be unhappy with Blaufarb’s performance.
 

 On July 27, 1992, Blaufarb filed a grievance protesting that her transfer to plaintiffs department was being made permanent without her consent. In this grievance, Blaufarb stated that: “Mr. Wolff had periods of what can only be described as tyrannical, intimidating and abusive behavior.”
 
 See
 
 Exh. D, Complaint, filed July 27, 1992 (“Complaint”). However, the processing of her transfer was too far along and her grievance went unremedied.
 

 Shortly thereafter, on August 13, 1992, Blaufarb filed an internal complaint against plaintiff alleging that he had sexually harassed her in the workplace.
 
 See
 
 Exh. C, Complaint. She claimed that he had touched himself, discussed his sexual prowess, expressed his attraction to her, inquired about her private life and attempted to touch her.
 
 See id.
 
 Plaintiff, in response, claimed that her complaint was vengeful and retaliatory.
 

 FISA then undertook to investigate Blaufarb’s sexual harassment charges against plaintiff. An Equal Employment Opportunity (“EEO”) Officer at the Office of the Comptroller and the Assistant Counsel at the Office of the Comptroller (both women) assisted. The investigation consisted of interviewing eight employees including individuals who had worked with Blaufarb and plaintiff and witnesses identified by them. Plaintiff and Blaufarb were also interviewed.
 

 Plaintiff was given an opportunity to participate in the investigation and submitted extensive documentation. Apparently, three women who were interviewed in the course of the investigation reported similar incidents involving plaintiff, with details mirroring Blaufarb’s account of plaintiff’s sexual harassment. The EEO Officer then concluded that sexual harassment had occurred and recommended that plaintiff be suspended and given “sensitivity training” concerning sexual harassment in the workplace.
 

 On April 22, 1993, Blaufarb made a formal complaint of discrimination and on May 18, 1993, she filed a complaint against FISA and plaintiff with the New York City Commission on Human Rights. This complaint essentially reiterates the details included in the first internal complaint against plaintiff,
 
 i.e.,
 
 it alleges that plaintiff touched himself, spoke inappropriately about sexuality and tried to touch Blaufarb.
 
 See
 
 Exh. E, Complaint. Blaufarb also charged respondents with violating the Administrative Code of the City of New York and Title VII.
 

 A panel was convened on October 22,1993, comprised of members from the Office of Management and Budget, FISA and the
 
 *262
 
 Comptroller. This panel agreed with the EEO Officer’s conclusion that plaintiff had sexually harassed Blaufarb. Plaintiff was promptly demoted, formally reprimanded and required to attend sexual harassment seminars. Plaintiff appealed this determination and his appeal was denied on June 9, 1994.
 

 Following the denial of his appeal, plaintiff was repeatedly notified of the dates these sexual harassment seminars were held. He was also repeatedly and explicitly warned in writing that his participation was a prerequisite to his continued employment. Nonetheless, plaintiff refused to attend the seminars. Plaintiff was finally terminated on November 30,1994 for insubordination,
 
 i.e.,
 
 for failing to attend the mandatory seminars. He now claims that these seminars “constituted punishment for something he did not do and that his participation in such a seminar as it was designed would be repugnant to his religious beliefs and practices [as an Orthodox Jew],”
 
 see
 
 Complaint, par. 13; that is, he contends that open discussion of sexual harassment violates his religion’s emphasis on modesty. Yet plaintiff never informed City defendants prior to his termination that these seminars offended his faith. Simultaneously, plaintiff was pursuing litigation in state court, described below.
 

 II.
 
 Prior Litigation
 

 On June 29,1994 (after being demoted but before being fired) plaintiff filed an Article 78 Petition in State Supreme Court New York County. In it, he alleged that the investigation of Blaufarb’s sexual harassment charge was improper and sought restoration of his salary and position. On December 12, 1994, Justice Helen Freedman denied plaintiffs petition, finding that his due process rights had not been violated. After reviewing the evidence, Justice Freedman found that “[t]he record indicates that FISA fulfilled its legal obligation to investigate sexual harassment in a reasonable manner.”
 
 Wolff v. City of New York and FISA
 
 (Action No. 119057/94 Sup. Ct.NY.Co.) (Exh. 6, Waters Aff.) (hereinafter,
 
 “Wolff I
 
 ”). She further concluded that “[t]he submissions disclose ample grounds for FISA’s decision to discipline Wolff.”
 
 Id.
 

 After
 
 Wolff I,
 
 plaintiff was terminated for insubordination. Then, on December 8,1994, plaintiff filed a Supplemental Order to Show Cause in the same case, seeking reinstatement. The court treated this as a motion supplementing the original Article 78 proceeding. For the first time, plaintiffs affidavit accused respondents of religious bias. He also charged that City defendants’ investigators were necessarily biased against him because they were all women. Oral arguments were held and the details of the investigation, the harassment seminars and the alleged discriminatory investigation by City defendants were all addressed.
 

 On December 16, 1994, Justice Freedman issued a second opinion upholding the validity of plaintiffs termination. Exh. 11, Waters Aff. (hereinafter,
 
 “Wolff II”).
 
 Specifically, Justice Freedman found that “[City defendants] have put forth sufficient evidence that petitioner’s termination for insubordination was justified, inasmuch as he repeatedly refused to attend the sensitivity training sessions as directed by his employer. [Plaintiff] has put forward no evidence that [City defendants] acted in bad faith.”
 
 Id. Wolff I
 
 and
 
 Wolff II
 
 were appealed to the First Department; however the appeal was not perfected within the statutory nine-month period. Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission on March 3, 1995, followed by the complaint in this action on July 27, 1995.
 

 Plaintiff alleges that Blaufarb embarked on a campaign of retaliation because she was disappointed that her grievance went unremedied and angry about his negative reviews of her job performance. He asserts that City defendants targeted him and accepted Blaufarb’s accusation with “less proof’ because they are biased against observant Jews. He also alleges that his orthodoxy prevents him from attending sexual harassment seminars which, he charges, are discriminatory because only men are required to attend. Finally, he claims that the investigation of Blaufarb’s charges was necessarily biased because all participating investigators were female.
 

 
 *263
 
 III.
 
 Standard For Dismissal
 

 Blaufarb and City defendants have (separately) moved to dismiss plaintiff’s complaint for failure to state a claim on which relief may be granted, pursuant to Fed. R.Civ.P. 12(b)(6). A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.
 
 Conley v. Gibson, 355
 
 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader.
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974);
 
 Cruz v. Beto,
 
 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).
 

 Because plaintiff has failed to state claims upon which this court may grant him relief, and for the reasons set forth below, this court hereby grants Marilyn Blaufarb’s motion to dismiss plaintiffs claim against her as well as City defendants’ motion to dismiss plaintiffs claims against them.
 

 IV.
 
 Plaintiffs Claim For Intentional Infliction Of Emotional Distress Against Defendant Blaufarb Is Time-Barred
 

 Having voluntarily dropped his claim for defamation,
 
 [1]
 
 plaintiff has only one remaining cause of action against Blaufarb— intentional infliction of emotional distress (“IIED”). Blaufarb has moved to dismiss this claim on the ground that it is barred by the statute of limitations.
 

 The statute of limitations for intentional torts is one year. N.Y.Civ.Prac.L. & R., sec. 215(3). This applies to the tort of intentional infliction of emotional distress.
 
 Ornstein v. Pakistan Int'l Airlines Corp.,
 
 888 F.Supp. 28, 31 n. 11 (S.D.N.Y.1995);
 
 Williams v. Brooklyn Union Gas Co.,
 
 819 F.Supp. 214 (E.D.N.Y.1993). This action was commenced on July 27, 1995. Blaufarb argues that this claim is time-barred because over two years passed since publication of Blaufarb’s sexual harassment charges in May 1993.
 

 Plaintiff disagrees. According to plaintiff, Blaufarb intentionally and recklessly fabricated her charges against him. After the initial publication of the charges in 1993, plaintiff alleges that Blaufarb failed to withdraw and continuously prosecuted her charges. For instance, plaintiff claims that, at a December 19, 1994 mediation hearing, Blaufarb again “refused to withdraw her charge” and requested his termination. This continuous prosecution and failure to retract her charges, according to plaintiff, constitutes a “continuing tort” sufficient to toll the statute of limitations.
 

 Under New York law, to establish a cause of action for intentional infliction of emotional distress plaintiff must demonstrate four elements: (1) extreme and outrageous conduct on the part of defendant; (2) that defendant possesses the intent to cause, or exhibits disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between defendant’s conduct and the injury suffered; and (4) that plaintiff endures severe emotional distress.
 
 Neufeld v. Neufeld,
 
 910 F.Supp. 977, 984-85 (S.D.N.Y.1996) (citing
 
 Howell v. New York Post Co.,
 
 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993);
 
 Coliniatis v. Dimas,
 
 848 F.Supp. 462, 470 (S.D.N.Y.1994)).
 

 It is hard to prevail on a claim for IIED. The conduct alleged to constitute IIED must be “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.”
 
 Herlihy v. The Metropoli
 
 
 *264
 

 tan Museum of Art,
 
 214 A.D.2d 250, 633 N.Y.S.2d 106, 114 (1st Dep’t 1995) (citations omitted). Likewise, the Second Circuit has noted approvingly that New York courts have been “very strict” in applying this test.
 
 See Martin v. Citibank, NA.,
 
 762 F.2d 212 (2d Cir.1985).
 

 As a preliminary matter, Blaufarb argues that plaintiff has failed to allege facts which would sustain a cause of action for IIED and this court agrees. Given the tough standards described above, this court finds that a false charge of sexual harassment, although reprehensible, “does not rise to the level of outrage required to recover under a cause of action that is limited to only the most egregious of acts.”
 
 Herlihy,
 
 633 N.Y.S.2d at 114.
 

 In
 
 Gay v. Carlson,
 
 the Second Circuit specifically found that lodging official complaints about a person’s conduct in the workplace,
 
 even if made wp and malicious,
 
 “simply fails to measure up to what is required to establish this claim [for IIED].” 60 F.3d 83, 89 (2d Cir.1995) (citations omitted).
 
 See also, Herlihy,
 
 633 N.Y.S.2d at 114 (being falsely accused of discrimination is not IIED);
 
 Martin,
 
 762 F.2d at 212 (racially discriminatory investigation is not IIED);
 
 Murphy v. American Home Products Corp.,
 
 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (firing employee in humiliating manner is not IIED);
 
 Shea v. Cornell University,
 
 192 A.D.2d 857, 596 N.Y.S.2d 502 (3d Dep’t 1993) (sexual harassment in workplace is not IIED);
 
 Leibowitz v. Bank Leumi Trust Co.,
 
 152 A.D.2d 169, 548 N.Y.S.2d 513 (2d Dep’t 1989) (use of ethnic and religious slurs to coerce employee to leave job is not IIED). Plaintiff cites no authority that counsels otherwise.
 

 Moreover, plaintiff misunderstands and misapplies the continuing tort doctrine. It is true that continuous and coercive harassment can establish a claim for IIED.
 
 Neufeld,
 
 910 F.Supp. at 984 (citations omitted). In such situations “the statute of limitations ... runs from the last wrongful act.”
 
 Id.
 
 at 982 (citing
 
 Leonhard v. United States,
 
 633 F.2d 599, 613 (2d Cir.1980),
 
 cert. denied,
 
 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981));
 
 Thomas v. City of New York,
 
 814 F.Supp. 1139, 1153 (E.D.N.Y.1993);
 
 Summers v. County of Monroe,
 
 537 N.Y.S.2d 703 (4th Dep’t),
 
 appeal dismissed,
 
 74 N.Y.2d 735, 544 N.Y.S.2d 819, 543 N.E.2d 84 (1989). Thus the statute of limitations may be tolled until a continuing harm ceases.
 

 This doctrine, however, is not helpful to plaintiffs case. To begin with, plaintiffs complaint contains no “concrete factual allegations of a continuing course of conduct that terminated within one year” of commencement of the action.
 
 Misek-Falkoff v. Int’l Business Machines,
 
 162 A.D.2d 211, 556 N.Y.S.2d 331, 332 (1st Dep’t),
 
 appeal denied,
 
 76 N.Y.2d 708, 560 N.Y.S.2d 990, 561 N.E.2d 890 (1990). Instead, there is only vague allusion to Blaufarb’s “failure” to withdraw her sexual harassment complaint in plaintiffs brief opposing the instant motion. This falls dreadfully short of sufficiently alleging a continuing course of IIED.
 
 See, e.g., Neufeld,
 
 910 F.Supp. at 983 (analyzing the adequacy of plaintiffs allegations of a continuing course of IIED).
 

 Further, as this court recently explained: “claims for IIED that allege a continuing pattern and practice of actionable behavior may invoke the continuing tort doctrine to provide an exemption from the statute of limitations where the last
 
 actionable act
 
 of the alleged course of conduct falls within the statute of limitations.”
 
 Id.
 
 (emphasis added);
 
 see also Bonner v. Guccione,
 
 916 F.Supp. 271, 275-78 (S.D.N.Y.1996) (holding that plaintiff may assert claim for IIED where last act of uninterrupted course of actionable conduct fell within statute of limitations). Failing to withdraw a formal complaint is not “utterly intolerable in a civilized society” and, consequently, is not an “actionable act” of IIED. For this reason, it would not toll the statute of limitations under the continuing tort doctrine.
 

 V.
 
 Plaintiffs Title VII Claims Against City Defendants Are Collaterally Estopped
 

 In view of the prior litigation described above, City defendants have moved to dismiss plaintiffs complaint in its entirety, based on the doctrine of collateral estoppel. Collateral estoppel may be invoked where an
 
 *265
 
 issue of law or fact has been litigated and determined in a prior proceeding by a valid and final judgment.
 
 Wilson v. Steinhoff,
 
 718 F.2d 550, 552 (2d Cir.1983). This doctrine precludes a party from re-litigating issues that were actually litigated or necessarily determined in the previous suit.
 
 See
 
 Weinstein, Korn & Miller,
 
 New York Practice
 
 p. 5011.24 (1992 & 1993 Supp.). In general, issues actually litigated in a prior state court proceeding are entitled to the same collateral estoppel effect in a subsequent federal suit as they would have in a subsequent state court proceeding.
 
 Migra v. Warren City School District,
 
 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984).
 

 Federal courts must give the same preclusive effect to a New York court’s judgment that New York courts would give to it.
 
 Id.
 
 Under New York law, collateral estoppel is applicable when: (1) there exists an identity of issue which was necessarily decided in the prior proceeding and is decisive of the present action, and (2) the party against whom the estoppel is raised had a full and fair opportunity to litigate the issue in the prior proceeding.
 
 Murphy v. Gallagher,
 
 761 F.2d 878, 881 (2d Cir.1985) (citations omitted).
 

 It is undisputed that plaintiff has already challenged his demotion and dismissal in state court in an Article 78 proceeding on the grounds that it was discriminatory, arbitrary, capricious and illegal. And although plaintiff contends that collateral estoppel can not apply here because he did not sue in state court under Title VII, the law says otherwise. Collateral estoppel may apply to federal actions, including federal civil rights actions like this one, where identical issues were litigated and necessarily decided in a prior state court proceeding.
 
 See Kremer v. Chemical Constr. Corp.,
 
 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982);
 
 Allen v. McCurry,
 
 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980);
 
 Lee v. City of Peoria,
 
 685 F.2d 196 (7th Cir.1982). The cause of action in federal court need not be precisely the same, so long as the issues are.
 
 Wright v. Town of Ticonderoga,
 
 800 F.Supp. 1072, 1074-75 (N.D.N.Y.1992).
 

 For instance, in
 
 Genova v. Town of Southampton,
 
 the Second Circuit found that the plaintiff was precluded from relitigating his employment termination in a section 1983 action in federal court, since he had “already made the same argument, though not in constitutional terms” in an Article 78 proceeding in state court. 776 F.2d 1560 (2d Cir.1985). Similarly, in
 
 Kremer,
 
 the Supreme Court found that a Title VII action was collaterally estopped by prior state court litigation originating with an Article 78 proceeding. 456 U.S. at 480, 102 S.Ct. at 1896.
 
 See also Feldstein v. N.Y.C. Dep’t of Consumer Affairs,
 
 804 F.Supp. 471, 471 (E.D.N.Y.1992) (former city employee alleging retaliatory discharge in section 1983 action precluded by adverse Article 78 decision);
 
 Davis v. U.S. Steel Supply Etc.,
 
 688 F.2d 166 (3d Cir.1982),
 
 cert, denied,
 
 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) (state court’s affirmance of Human Relations Commission’s decision precludes section 1983 action);
 
 Unger v. Consolidated Foods,
 
 693 F.2d 703 (7th Cir. 1982) (state court’s review of administrative decision bars Title VII action).
 

 New York principles of collateral estoppel prevent plaintiffs who have had their fair day in court from relitigating the same factual issues in any later suit against the same parties.
 
 Genova,
 
 776 F.2d at 1561. Plaintiffs may not evade these principles by dressing up claims they have litigated and lost in state court as federal civil rights actions. Thus it is necessary, in the instant case, to consider the factual issues presented by the plaintiff. As previously noted, plaintiffs Title VII claims against City defendants hinge on the following contentions: (1) that City defendants’ investigation of Blaufarb’s charge was discriminatory in execution because they are biased against Orthodox Jews; (2) that City defendants were discriminatory in terminating plaintiff for failing to attend sensitivity seminars “repugnant” to his religious beliefs; (3) that City defendants’ investigation was “flawed and biased” because it was conducted exclusively by female investigators; and (4) that City defendants’ sensitivity training is only given to men and is therefore discriminatory against men.
 

 Whether or not plaintiff is collaterally es-topped from pursuing this federal lawsuit may be determined by considering two ques
 
 *266
 
 tions. First, were these four issues (clearly decisive in this action) necessarily decided in
 
 Wolff I
 
 and
 
 Wolff II?
 
 Second, did plaintiff have a full and fair opportunity to litigate them?
 

 Plaintiff argues that the issues of religious discrimination and sexual harassment were not litigated in state court. However, a review of Justice Freedman’s decisions and the record reveals that all four issues listed above were explicitly addressed. For instance, plaintiff claimed in his affidavit that his orthodoxy and membership in the Lubavitcher community had biased City defendants against him and “colored their response to [Blaufarb’s] complaint.” Exh. 7, Waters Aff. In response, City defendants put in evidence concerning their past efforts to accommodate plaintiff’s religious practices. Plaintiffs attorney represented, in an affirmation, that attendance at sexual harassment training seminars was “unjust punishment” and “would violate [plaintiffs] religious tenets, which require modesty on such matters.” Exh. 10, Waters Aff. City defendants countered that plaintiff never raised this issue during the period before he was fired for insubordination.
 
 [2]
 
 Plaintiff also complained in his affidavit to the state court that his investigators were all women — although the legal significance of this fact, without any showing of discrimination, escapes the court. Lastly, plaintiffs fourth cause of action alleged that attendance at the sensitivity training was only required of men and was thus discriminatory. City defendants replied that such training is, in fact, mandatory for all City employees.
 
 See
 
 New York City Charter sec. 812a(12); City of New York Affirmative Employee Plan for EEO 1991.
 

 Essentially, the gravamen of plaintiffs claims in both courts is the same — that he was fired as a result of City defendants’ religious and gender-based prejudices. And when Justice Freedman found, in
 
 Wolff I,
 
 that the City defendants’ harassment investigation had been conducted in a “reasonable manner,” it is clear that she had disagreed with plaintiffs claim that City defendants’ investigation was biased and rigged. The later decision in
 
 Wolff II,
 
 which followed additional arguments and submissions from both sides, further demonstrates that Justice Freedman fully considered plaintiffs claims but found them to be unsubstantiated:
 

 [City defendants] have put forth sufficient evidence that [plaintiffs] termination for insubordination was justified, inasmuch as he repeatedly refused to attend the sensitivity training sessions as directed by his employer. [Plaintiff] has put forward no evidence that [City defendants] acted in bad faith.
 

 Exh 11, Waters Aff.
 

 Finally, plaintiff protests that he was not accorded “full and fair opportunity to litigate” because no hearing was held and he had no chance to present witnesses. However, the Court of Appeals has held that collateral estoppel may apply even when the prior state court proceeding did not include a hearing.
 
 Dental Books Co. Inc. v. Schultz,
 
 786 F.2d 486, 489 (2d Cir.1986). A case decided on the papers may also have preclusive effect.
 
 Genova v. Town of Southampton,
 
 776 F.2d 1560, 1561 (2d Cir.1985) (“New York courts look to whether a claim has been ‘brought to a final conclusion,’ not to whether a full evidentiary hearing has been held on the claim”) (citations omitted). Plaintiff has been through an Article 78 proceeding with two stages, which included extensive submissions and oral arguments from both sides. Consequently, as a matter of law, plaintiff has already received a full and fair opportunity to litigate the issues he now brings to this court.
 

 Because the legal and factual issues before this court have been litigated and determined in prior proceedings, plaintiffs Title VII claims against City defendants are precluded. Justice Freedman has already suffered the task of reviewing and rejecting the same claims plaintiff makes here.
 

 VI.
 
 Defendant Blaufarb’s Counterclaim Against Plaintiff And Cross-Claim Against City Defendants Are Dismissed
 

 In her answer to the complaint in this action, Blaufarb counterclaimed against
 
 *267
 
 plaintiff, incorporating the allegations contained in her verified complaint currently pending before the Commission of Human Rights of the City of New York and cross-claimed against City defendants for their “tortious” conduct. Since plaintiffs complaint is dismissed in its entirety, this court exercises its discretion to dismiss Blaufarb’s counterclaim and cross-claim, over which it has solely supplemental jurisdiction, pursuant to 28 U.S.C. sec. 1367(c). This section provides in relevant part: “district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction.”
 

 VII.
 
 Conclusion
 

 For the reasons cited above: (1) plaintiffs claim for intentional infliction of emotional distress against Marilyn Blaufarb is dismissed on the ground that it is barred by the statute of limitations, (2) plaintiffs claims arising under Title VII against City defendants are all dismissed because they are barred by the doctrine of collateral estoppel and (3) defendant Blaufarb’s counterclaim against plaintiff and cross-claim against City defendants are also dismissed.
 

 [1]
 

 . Plaintiff originally charged Blaufarb with defamation as well as intentional infliction of emotional distress but then agreed, in his opposition papers, that his claim for defamation is barred by the statute of limitations. Again, the statute of limitations for intentional torts, such as defamation, is one year. N.Y.Civ.Prac.L. & R., sec. 215(3). Where the allegedly defamatory statement was published, and then re-published, as here, the time begins to run from the date of second publication.
 
 Rinaldi v. Viking Penguin, Inc.,
 
 52 N.Y.2d 422, 438 N.Y.S.2d 496, 420 N.E.2d 377 (1981). Because the charges were most recently published on May 17, 1993 in Blaufarb’s verified complaint with the New York City Human Rights Commission and this action was filed on July 27, 1995, the claim is indeed barred.
 

 [2]
 

 . City defendants also note that plaintiff's proclaimed need for modesty, raised for the first time during
 
 Wolff II,
 
 fails to square with his admission that he graphically discussed sex with Blaufarb in the workplace.